# Jones *versus* Crow.

After an uninterrupted adverse enjoyment of an easement on the land of another, for more than twenty-one years, a grant of the privilege thus exercised will be presumed.

A party who claims, by reason of long usage, to obstruct the flow of the water through his land, to the injury of a lower mill-owner, must prove that such obstruction has been continued, exclusive, and with the acquiescence of the owner of the land, for twenty-one years.

The proof, in such case, must be clear, definite, and unequivocal, both as to the time of the enjoyment, and the extent of the obstruction.

The right thus acquired is to be measured by the enjoyment of it; and the party has no right, subsequently, to use it in a different and more extensive manner.

The owner of the lower mill could not affect a right thus acquired, by constructing a new race to convey the water to his mill.

ERROR to the Common Pleas of *Chester county.*

[Jones v. Crow.]

This was an action on the case by Evan Jones against Thomas Crow, for wrongfully casting sawdust into the tail-race of the defendant's saw-mill, upon Buck Run, in Sadbury township, which flowed down said race into the mill-dam and head-race of the plaintiff, on the said stream, thus obstructing and filling up the said head-race and mill-dam.

The plaintiff was the owner of a grist-mill on Buck Run, and the defendant was the occupant of a saw-mill, immediately above him, on the same stream.

The whole premises, including the land now occupied by both mills, were formerly owned by Joseph Parke, who, in 1818, sold the lower property, with the grist-mill, to Thomas Atkins; and in 1832, the ownership of it became vested, by mesne conveyances, in Evan Jones, the plaintiff.

About 1820 or 1822, George W. Parke, a son of Joseph Parke, went into possession of the upper tract, and erected a saw-mill with an upright saw; the sawdust from which, in part, fell into the tail-race of the mill, and thence passed down the stream.

In 1823, this tract was conveyed to George W. Parke; and the mill was thus worked until 1854, when one Jefferis, a tenant of George W. Parke, put up a circular saw; which, however, he abandoned in two or three months.

In 1855, George W. Parke conveyed the saw-mill and premises to William Parke, who leased the same to Thomas Crow, the defendant. Crow, without removing the upright saw, erected two circular saws, and constructed a funnel of canvas, whereby all the sawdust was conveyed directly into the tail-race, and thence passed down the stream. The upright and circular saws were not in operation at the same time.

In 1848, the plaintiff reopened an old ditch, which had been closed for many years, so as to convey the water from the defendant's tail-race to his own head-race.

On the trial the plaintiff's counsel presented the following points, upon which he requested the court to charge the jury:—

1. The owner of land is entitled to the use of the unobstructed flow of water through his land, and a party who claims a right to obstruct or interfere with such flow, by reason of long usage, must prove, to the satisfaction of the jury, that such obstruction or interference has been continued, exclusive, and with the knowledge and acquiescence of the owner of the land, for twenty-one years.

2. The proof in such case should be clear, definite, and unequivocal, both as to the time of enjoyment, and also as to the extent of the obstruction or interference.

3. The extent of the right of the defendant, if any, is to be measured by the enjoyment of it; and he had no right to use it in a different and more extensive manner. Therefore, whatever right defendant had acquired to allow the sawdust to pass from

[*Jones v.* Crow.]

his mill into the stream by one undirected course, he had no right to conduct it directly into his tail-race by the schute, and so convey it into the plaintiff's head-race.

4. Whatever right the defendant may have had to obstruct the watercourse of the plaintiff by the sawdust, as such watercourse may have been at the time of commencing such obstructions, it gives him no right to cause an obstruction in any other watercourse that the plaintiff might construct; and, therefore, if the jury believe that the sawdust obstructed the watercourse called the old ditch, after it was made, as testified by John Boyd, and the new race inside of the dam, both of which were constructed within twenty-one years, the plaintiff is entitled to recover.

5. The right claimed by the defendant in this case is not of the kind which can be acquired by long user.

6. In order that a party may acquire, by the use of a stream on his own land, a right to obstruct the stream on his neighbour's land, the use must be such as is *necessary*, and not merely convenient, for his enjoyment of the stream.

7. If the use of the circular saws, or the apparatus of the defendant for carrying the saw dust into plaintiff's watercourse, has increased the obstructions beyond what it was before, the plaintiff is entitled to recover.

8. It is not necessary that the plaintiff should prove actual injury; if the sawdust was deposited in the race of the plaintiff by the act of the defendant, without right, it is sufficient to sustain the plaintiff's action.

The following points were presented by the defendant's counsel:—

1. If the jury believe that, for the period of twenty-one years, during George W. Parke's occupancy of defendant's mill, the sawdust thereof was cast into the water and carried down thereby upon the plaintiff's land, the law presumes a grant of privilege to do so, and the right thereby acquired is indefeasible.

2. The evidence is undisputed as to the existence and continuance of that practice, and exclusively establishes the right.

3. Unless the plaintiff has clearly shown that defendant, during the time he occupied the mill, cast more sawdust into the water than was accustomed to be done by George W. Parke during a like period of time, within the said twenty-one years, he cannot recover in this action.

The court below (HAINES, P. J.) delivered the following charge to the jury:—

"Evan Jones brings his action before you, against Thomas Crow, to recover damages for certain injuries which he alleges he has sustained by reason of the illegal conduct of the defendant. In his declaration, wherein he sets out the cause of complaint, he says that he, the said Evan Jones, of right ought to have had and

[Jones *v.* Crow.]

enjoyed, and still of right ought to have and enjoy the benefit and advantage of a certain dam in and across a certain stream or watercourse called Buck Run, for the purpose of collecting the waters of said stream; and also the benefit and advantage of a certain mill-race for the purpose of conveying the water of said stream or watercourse, and also the waters collected by said mill-dam into the mill and premises of him, the said Evan Jones, to be used by him, the said Evan Jones, in carrying on his trade or business of a miller, and for the beneficial occupation and enjoyment of the said mill and premises. Yet the defendant, Thomas Crow, wrongfully and unjustly cast and deposited from his saw-mill divers large quantities of sawdust, which flowed in large quantities into the stream, and flowed and came down into the dam and mill-race of the plaintiff. By reason whereof the mill-dam and mill-race of the said Evan Jones were and are greatly obstructed and filled up, and he was and is prevented from exercising his trade or business in so beneficial a manner as he otherwise might and would have done, to his disadvantage, &c., &c.

"The circumstances which stand out prominently in the case would appear to be these: The plaintiff possesses a grist-mill on Buck Run in this county. On the same stream, above the mill of the plaintiff, Thomas Crow, the defendant, is in the possession of a saw-mill, by lease from William Parke, the owner, to the defendant. The whole premises, including both mills, were formerly owned by Joseph Parke, who, in 1818, sold the lower property to Thomas Atkins, retaining the ownership of the upper mill in himself. In 1823, Joseph Parke sold the upper premises to Washington Parke, and thus the title of the two mills became out of Joseph Parke, and in the ownership of different holders. Thomas Atkins held the lower mill for a time, it then went into the possession of David Parke, who resided thereon for a short period, when it went into the possession and ownership of the present plaintiff, Evan Jones, more than twenty-one years ago, to wit, in the year 1832. Washington Parke lived at the upper mill up to the year 1855, or thereabouts, when he sold it to the present owner, William Parke, who has leased it to Thomas Crow, the present defendant. Thus we have the legal possession to the respective premises in the plaintiff and defendant, with the rights and privileges which belong to their respective positions. The question then arises, what are the rights of the parties with respect to the matter controverted? The two mills, the saw-mill above and the grist-mill below, have been possessed, as you will have noticed, for more than twenty-one years, or indeed more than thirty years. Their legal rights are a question for the court, the evidence and its application to the principles of law are for you.

"Every proprietor on each bank of a river is entitled to the land covered with water to the middle thread of the stream. In

virtue of this ownership, he has a right to the use of the water flowing over it in its natural current, without diminution or obstruction. The consequence of this principle is, that no proprietor has a right to use the water to the prejudice of another. This is the necessary result of the perfect equality of right among all the proprietors of that which is common to all. Every man in this country has an unquestionable right to erect a mill on his own land, and to the use of the water passing through the land, as he pleases, subject only to this limitation, that his mill must not be so constructed and employed as to injure his neighbour's mill. These are principles which none will contradict, and which are general in their character, yet cases may arise wherein they will not apply. While a riparian proprietor who owns the banks of a stream, has a right to have the water flow in its natural current without any obstruction over the whole extent of his land, yet his rights may be impaired by grant, license, or an adverse possession for twenty-one years. Our Supreme Court has said, and it is the undoubted law, that an uninterrupted adverse enjoyment for twenty-one years, is a title that cannot be afterwards disputed. Such enjoyment, without evidence to explain how it began, is presumed to have been in pursuance of a full and unqualified grant. The case before you shows, as I have already stated, that old Mr. Parke held both possessions while the mills were on the respective premises, and conveyed the title to the mill below to another, while he still held the upper in his own right. What reasonable inference may be drawn from this fact, that the right for the mill-dam was retained, is for the jury, and may be considered in connection with the presumption arising from length of time. Hence, if the jury believe that for the period of twenty-one years, during George W. Parke's occupancy of the defendant's mill, the sawdust thereof was cast into the water and carried down thereby upon the plaintiff's land, the law presumes a grant of the privilege to do so, and the right thereby acquired is indefeasible. The evidence to the mind of the court is undisputed as to the existence and continuance of that practice; and conclusively establishes the right. Here, however, it is proper to observe that the plaintiff's points are true, and are hereby affirmed, that the owner of the land below is entitled to the use of the unobstructed flow of water through his land, and the party who claims the right to obstruct or interfere with such flow by reason of long usage, must prove to the satisfaction of the jury that such obstruction or interference has been continued, exclusive, and with the knowledge and acquiescence of the owner of the land for twenty-one years. The proof in such case should be clear, definite, and unequivocal, both as to the time of enjoyment, and also to the extent of obstruction. It is scarcely denied, indeed it cannot be denied, if the evidence is believed, that the

[Jones v. Crow.]

owner of the upper mill has exercised the uninterrupted and adverse right of throwing the sawdust into the stream for more than twenty-one years, and whether with the knowledge and acquiescence of the owner below, must be a question for the jury.

"The extent of the right must be measured by the enjoyment of it, and he had no right to use it in a different and more extensive manner. The existence of a grant being inferred from usage, it follows that the same usage must determine the extent of it. We know the right, only as we collect it from the enjoyment; and therefore, the enjoyment must be the measure of it. Whether the dust got into the tail-race one way or another, cannot vary the principle; the question is, as to the extent to which it was thrown into the race. It is for the jury to say from the evidence, whether the shute threw more dust into the race or not, inasmuch as when not thrown into the shute it fell either into the race or pit, from whence it was dislodged sometimes by the water, and occasionally, perhaps, being wheeled away. Unless the plaintiff has clearly shown, that defendant during the time he occupied the mill, cast more sawdust into the water than was accustomed to be done by George W. Parke during a like period of time within the said twenty-one years, he cannot recover in this action.

"I have thus affirmed all the points furnished me by the defendant's counsel, and several of those made by the counsel for the plaintiff. The three following I cannot affirm. I am asked to charge as follows:

"'Whatever right the defendant has to obstruct the watercourse of the plaintiff by the sawdust, as such watercourse may have been at the time of commencing such obstruction, it gave him no right to cause an obstruction in any other watercourse that the plaintiff might construct; and therefore, if the jury believe that the said sawdust obstructed the watercourse called the old ditch, after it was made, as testified by John Boyd, and the new race inside of the dam, both of which were constructed within twenty-one years, the plaintiff is entitled to recover.'

"This point I cannot affirm. The right which the defendant acquired by long user, was the right to throw into his tail-race the sawdust from his mill, and to cause it to flow down on the land and the premises of the plaintiff. It was not a right to throw it into the dam, for otherwise his right would have ceased when the dam became filled; nor was it the right to throw it into the head-race of the plaintiff's mill, but it was the right to use his own mill as he had used it for more than twenty-one years.

"Again, I am asked to charge that the right claimed by the defendant in this case, is not of the kind which can be acquired by long user. This is not affirmed. I incline to the opinion that

[Jones *v.* Crow.]

it is, although the point is new, and I may err. I prefer to say that it may be acquired in that way. The sixth point, although not withdrawn, is not urged, and it is disaffirmed.

"The plaintiff furnished me with two other points:

"1. If the use of the circular saw, or the apparatus of the defendant for carrying the sawdust into the plaintiff's watercourse, has increased the obstruction beyond what it was before, the plaintiff is entitled to recover.

"2. It is not necessary that the plaintiff should prove actual injury. If the sawdust was deposited in the race of the plaintiff by the act of the defendant, without right, it is sufficient to sustain the plaintiff's action.

"These points are affirmed in terms. The jury will thus notice that I affirm the principles:

"1. That every man has the right to have the advantage of a flow of water in his own land, without diminution, or alterations, but an adverse right may exist, founded on the occupation of another.

"2. The proof of such adverse right should be clear and unequivocal.

"3. The extent of the right must be measured by the enjoyment of it.

"4. Although a right may have been legally acquired, it cannot be extended to the injury of another.

"I will here add, that if the defendant, after having acquired the right to use the upright saw, chose to vary the power by attaching to the works a circular instead of an upright saw, he had the right to do so, if he threw no additional quantities of dust on the land of the plaintiff. If he did this, he exceeded his rights, and the plaintiff has sustained his action.

"Should you find for the plaintiff, it will be your duty to say what damages should be awarded. In this connection, you will remember, that the defendant has nothing to do with the dam; that seems to have been filled long years ago. As the question is one of right, the damages, if you find any, will, I presume, be rather nominal than vindictive."

To this charge the plaintiff excepted; and a verdict and judgment having been rendered for the defendant, the plaintiff sued out this writ, and here assigned such charge for error.

*Futhey* and *P. F. Smith,* for the plaintiff in error, cited Cooper *v.* Smith, 9 *S. & R.* 33; Hoy *v.* Sterrett, 2 *Watts* 330; Esling *v.* Williams, 10 *Barr* 128; Daniel *v.* North, 11 *East* 372; Sargent *v.* Ballard, 9 *Pick.* 255; Wheatley *v.* Baugh, 1 *Casey* 534; Acton *v.* Blundell, 12 *M. & W.* 349; Partridge *v.* Scott, 3 *Id.* 230; Angell on Water Courses, ch. 4, § 4, p. 109–10; *Id.* ch. 3, § 3, p. 69; Cooper *v.* Barber, 5 *Taunt.* 99; Richart *v.* Scott, 7 *Watts*

[Jones v. Crow.]

460; Seibert v. Levan, 8 *Barr* 390; *Gale & Wh.* 52; Butz v. Ihrie, 1 *Rawle* 222; Mertz v. Dorney, 1 *Casey* 519; *Angell on Water Courses*, ch. 5, § 4, p. 110; Stiles v. Hooker, 7 *Cow.* 266.

*W. Darlington* and *Butler*, for the defendant in error, cited Howell v. McCoy, 3 *Rawle* 256; *Angell on Water Courses* 80; Strickler v. Todd, 10 *S. & R.* 63.

The opinion of the court was delivered by

READ, J.—Joseph Parke was the owner of a tract of land in Sadsbury township, Chester county, through which flowed a stream, called Buck Run. In the year 1818, he sold the lower part of this tract, with a grist-mill erected on it, to Thomas Atkins; and in 1820, or 1822, erected on the upper tract a saw-mill. On the 6th July 1857, Evan Jones, the present owner of the lower tract, conveyed to Atkins, commenced an action on the case for a nuisance, against Thomas Crow, the tenant of William Parke, the then owner of the upper tract and saw-mill.

The injury complained of was, that the defendant wrongfully and unjustly cast and deposited, and caused to be cast and deposited, from the said saw-mill of the defendant, and by the working and use thereof, into and near to other parts of the said stream or watercourse, higher up the stream thereof than the mill-dam and mill-race and other premises of the plaintiff, divers large quantities of sawdust, which there flowed and came in large quantities into the said stream or watercourse higher in the stream thereof than the premises of the plaintiff, and flowed and came down the said stream or watercourse, into the said mill-dam and mill-race of the plaintiff, by reason of which the said mill-dam and mill-race of the plaintiff were and are greatly obstructed and filled up; and the plaintiff is prevented from having the free use of the water of the said stream for his mill, and is prevented from exercising his trade or business in as beneficial a manner as otherwise he might and would have done; and he has been injured in his business, and his said premises have been deteriorated in value.

The saw-mill was at first worked with an upright saw. This continued until 1854, when a circular saw was put up and abandoned, and then two circular saws were put up; but the upright and circular saws were not in operation at the same time.

As in all saw-mills, the sawdust, from the first working of the upright saw, fell, in larger or smaller quantities, into the tail-race of the defendant, and thence passed down the stream; portions of it, no doubt, settling in the stream on the plaintiff's premises.

This was the real injury complained of; and the defence was, that this injury (if there was any sustained) commenced more than twenty-one years before this suit was brought. There is no doubt

[Jones *v.* Crow.]

that an easement like that claimed here, may arise from an unin-
terrupted adverse enjoyment of more than twenty-one years, and
will impose a servitude on the plaintiff's land of which he cannot
complain; because it has arisen from his own acquiescence, during
the period which the law has assigned for raising the presumption
of a grant of the privilege thus exercised.

The judge, therefore, correctly said, "If the jury believe that
for the period of twenty-one years, during George W. Parke's
occupancy of the defendant's mill, the sawdust thereof was cast
into the water and came down thereby upon the plaintiff's land,
the law presumes a grant of the privilege to do so, and the right
thereby acquired is indefeasible." "It is proper to observe,"
says the judge, "that the plaintiff's points are true, and are
hereby affirmed; that the owner of the land below is entitled to the
use of the unobstructed flow of water through his land, and the
party who claims the right to obstruct or interfere with such flow
by reason of long usage, *must prove to the satisfaction of the jury,*
that such obstruction or interference has been continued, exclusive,
and with the knowledge and acquiescence of the owner of the land
for twenty-one years. The proof in such case should be clear,
definite, and unequivocal, both as to the time of the enjoyment,
and the extent of the obstruction."

In speaking of the extent of the right thus acquired, the judge
says, "it must be measured by the enjoyment of it, and he had
no right to use it in a different and more extensive manner."

This principle is still more distinctly displayed in the two points
submitted by the plaintiff and affirmed by the court:—

1. If the use of the circular saw, or the apparatus of the de-
fendant for carrying the sawdust into the plaintiff's watercourse,
has increased the obstruction beyond what it was before, the
plaintiff is entitled to recover.

2. It is not necessary that the plaintiff should prove actual
injury. If the sawdust was deposited in the race of the plaintiff
by the act of the defendant, without right, it is sufficient to sustain
the plaintiff's action.

It appears to us, that the instructions of the judge were emi-
nently clear and correct, and the questions of fact being all sub-
mitted to and found by the jury in favour of the defendant, there
is no reason to disturb the judgment below.

There are two other points which, however, require notice.
The judge properly refused to charge the jury that the plaintiff,
by opening or constructing new races or ditches to conduct the
water to his mill; within twenty-one years, could affect the ease-
ment of the defendant; which was the right of having the sawdust
cast into the water, carried down thereby upon the plaintiff's land.

The other was a mistake of fact, which, if pointed out at the
time, would have been corrected at once; and which had no effect

[*Jones v. Crow.*]

upon the reasoning of the judge, nor upon the case as it was put to the jury.

Judgment affirmed.