# Huddleston et ux. *versus* Borough of West Bellevue and Township of Killbuck.

1. Where township and borough authorities drain a public road, the drainage of which is naturally down depressions and ravines leading from the road to a river, by artificial gutters on each side of the road carrying the drainage past said ravines, which gutters are joined by a culvert and empty the whole drainage upon the land of an individual, by which his land is damaged, the township or borough is liable to him for the damage thus caused.

2. One who prevents the drainage of a public road from flowing upon his land and turns it back from its natural course upon the road, whence it flows down gutters upon each side of the road and empties upon the land of another, who does not object, which land he subsequently purchases, imposes no servitude upon that land, and in an action by one deriving title to said land from him for damage caused by the flowing of said drainage upon the land, it is error to admit the declarations of the party first turning the water back upon the road.

3. For a tort committed jointly the law will not apportion the guilt or responsibility of the tort-feasors, but when compensatory damages are claimed holds them all for what the most culpable ought to pay. The cost of filling up a cut is proper to be considered in measuring the damage caused by a washout.

4. It is error to admit evidence showing the cost of conducting the water across the road from the point where the damage was done. A witness who is not shown to have knowledge of a particular work will not be permitted to testify as to the cost of doing such work.

5. The answering of the points of the parties in the general charge is condemned as misleading to the jury, not complying with the Act of Assembly, and imposing great labor on the Supreme Court.

October 29th, 1885.    Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett, Green and Clark, JJ.

Error to the Court of Common Pleas, No. 1, of *Allegheny county:* Of October and November Term, 1885, No. 90.

This was an action on the case brought by R. H. Huddleston and Clara Huddleston, his wife, in right of said wife, against the borough of West Bellevue and the township of Killbuck,

to recover damages for injury done to her land by the defend-
ants in conducting the drainage of a public road into and upon
her land.   On the trial of the case before BAILEY, J., the fol-
lowing facts appeared :   The public road, known as Beaver
road, runs through the borough of West Bellevue and the
township of Killbuck.   The defendant, Mrs. Huddleston, was
a daughter of David Shafer, who died seven or eight years
prior to the commencement of the suit, seized of the land now
owned by Mrs. Huddleston, who claims title from and under her
deceased father.   The Beaver road was constructed in 1849 or
1850 by the P., Ft. W. & C. R. W. Co., as a substitute for
another public road, appropriated for railroad purposes.

Mr. Shafer owned a large tract of land lying on both sides
of the new Beaver road, and by subsequent purchase from a
Mr. Shaw, acquired title to an additional tract, embracing
plaintiff's land described in her declaration, and thereby be-
came owner of all the land lying along the lower side of the
Beaver road, from West Bellevue borough line to Spruce run.
Prior to this purchase from Shaw, David Shafer prepared his
grounds for picnics.   Some fifteen or sixteen years before the
damage complained of, he constructed a drain and a sidewalk
along the lower side of the road, and carried the entire drain-
age of the road and hillside down to the land of Shaw.   Shaw
acquiesced in this manner of draining.   Subsequently Shafer
purchased the land of Shaw.   The place where the washout
complained of occurred is the point where Shafer turned the
water upon Shaw's land.   Shafer died seized of the Shaw land
now held by his daughter, and until his death he continued
the drainage as he first arranged it.

The defendants front on the northwest side of the Ohio
river, about six miles west of the city of Pittsburgh.   The
plaintiff resides and owns land in Killbuck township, on the
line of this Beaver road, and on the lower or river side of it.
Going westward towards her land, for the distance of 2,261
feet, the road aforesaid is laid on the ground which slopes
south to the Ohio river, and westward the course of the road
to Laurel or Spruce run.   West Bellevue borough lies east of
Killbuck township.   The Beaver road, beginning at the top
of the hill, Delp's land, in the borough of West Bellevue, runs
down hill westwardly through lands of John Birmingham, a
distance of 1,462 feet, then entering the township of Killbuck,
still down the hill, continues the further distance of 799 feet
to the land of Mrs. Huddleston, on the lower side of the said
road.   The whole distance from the top of the hill in West
Bellevue borough to Mrs. Huddleston's land, south of this
Beaver road, is 2,261 feet, and slopes continuously and unin-
terruptedly down towards the west and Laurel run.

[Huddleston *v.* Borough of West Bellevue, &c.]

Throughout the entire line of this route of 2,261 feet, there are at intervals ravines and depressions leading from this Beaver road to the Ohio river, where drainage would naturally flow if left to nature and not prevented by defendants. These gutters, through which the waters are now conducted, have been deepened by defendants, below the natural surface of their outlets to the Ohio river, so that the water could not by reason thereof flow out according to the laws of gravity directly to the Ohio river.

The flow of drainage, therefore, became accumulated in the roadside gutters in vast quantities, and flowed down and on through 2,261 feet to plaintiff's land. The force of the water down this long slope in freshets and thaws is irresistible and uncontrollable by plaintiff. This was increased by the supervisor of the township making a culvert from the upper to the lower side of the Beaver road at the township line, so as to run the waters of the two drains into one. He also stopped up the drain on the upper side below the culvert, and in front of his own grounds.

Plaintiff, foreseeing the probability of damages from the excessive accumulation of surface water, there having been a heavy freshet in 1882, gave the proper authorities of both defendants notice to take care of said surface water, but the notice was disregarded.

The defendant offered the following evidence, which was admitted under objection on part of the plaintiff:

1. (Witness Thos. Paisley.)

Q. State how far his property [David Shafer's] before his death extended along on either side of the road at any time.

Objected to as incompetent and irrelevant.

Objection overruled and bill sealed for plaintiffs.

A. It extended on the lower side of Birmingham, up to the line of West Bellevue, on the lower side adjoining John Shaw.

Q. Then after he bought from Shaw that piece where the water runs over, it extended where?

A. Away down the run at the foot of the hill, by the bridge.

Q. And on the upper side of the road he run all along up to your place?

A. Yes, sir; he adjoined me on the upper side. (First assignment of error.)

2. (Witness James Crawford.)

Q. From anything Mr. Shafer may have told you, do you know why he turned the water into the gutter and did not let it run down into Monitor grove?

A. He said he didn't want it to run into the grove, for it

made it murky and muddy in there ; he didn't want it to run on to his property—would spoil it for a picnic ground.

Q. About when was that ?

A. Sixteen or seventeen years ago.

Q. When was it he told you that, with reference to the time the walk was built ?

A. The time he made the walk, for I asked him his idea in turning it off; he said he didn't want it to run into the grove. That was about the time he turned it into a picnic ground.

The foregoing testimony as to declarations of Mr. Shafer, and what he did, is taken under exception, and bill sealed for plaintiffs. (Second assignment of error.)

3. (Witness Capt. John Birmingham.)

Q. Did you have any talk with David Shafer about turning the water into a drain instead of letting it down through the woods ?

Objected as incompetent.

Overruled, and bill sealed for plaintiff.

A. This fence matter just brought that matter up. I protested against the fence going up there. When I found he was determined to put the grove there, I thought it was best then to put up a better fence—higher fence—to protect my orchard ; objected to ; he did so. He told me he was going to turn the water off.

Q. Did he say for what reason ?

A. To protect his picnic grounds.

Q. He did afterwards turn it off.

A. He did do it ; yes, sir.  (Third assignment of error.)

4. (John Birmingham.)

Q. State whether it would be practicable from that point to carry the water across to the upper side of the road ?

A. It could be done at very great expense.

Q. State if that would be an extraordinary expenditure for a township ?

A. It certainly would.

Taken under objection as irrelevant. (Fourth assignment of error.)

The plaintiff presented the following points for charge to the court:

1. If the jury believe that the drainage of water in this case was accumulated from Delp's land, shown in the plan in evidence, in two gutters, one on each side of the road, through lands of Capt. Birmingham, the distance of 1,462 feet to the line of Killbuck township, and that just over the line of said borough and township the said township joins said gutter by a culvert in the road, and by these drains thus united, the surface water flow of showers and storms is accumulated and

carried the further distance of 799 feet without any outflow from the road, and empties on plaintiff's land, doing damage, the plaintiff is entitled to recover, if within six years of suit brought.

To this the court answered, after closing its general charge to the jury:

" The other points of the respective parties, except so far as covered by the general charge, are refused." (Fifth assignment of error.)

2. If you find that this Beaver road runs along and through land, the surface drainage of which is naturally down depressions and ravines leading from said road directly to the Ohio river, and that instead of the said drainage being conducted into such natural drainage or permitted to flow to the river therein, it is accumulated and carried by artificial drains on the sides of the said road, and by artificial embankments held therein, the party or parties so accumulating it, if damage is done, are liable for it.

The court answered:

" The other points of the respective parties, except so far as covered by the general charge, are refused." (Sixth assignment of error.)

3. If the jury find the defendants, or either of them, so constructed the artificial drains along the Beaver road that the surface drainage was conducted beyond where it would naturally have run, if let alone, such increase carried on down past natural outlets upon lands of the lower owner, is as matter of law to be held as excessive, and if damage has thereby come to plaintiff, she is entitled to recover.

The court answered:

" The other points of the respective parties, except so far as covered by the general charge, are refused." (Seventh assignment of error.)

4. That the measure of damages is what it cost to place the lands of plaintiff in the same condition they were in, prior to the injury done, and should only be compensatory, it not being claimed that the drainage was wantonly or maliciously done by either of defendants.

Taken to be answered in the general charge.

5. That, if you find the defendants were both negligent, each is liable for the injury sustained, without regard to the different degrees or shares of guilt. The damages are not divisible and the verdict should be for an amount against both defendants, for such sum as the most culpable should pay, and especially so in this case, as defendants have united in a common defence.

Taken to be answered in the general charge.

The following is the general charge of the court:

[The rules that govern a case of this character are in a great degree involved in a law maxim to the effect that water flows, and ought to flow, as it has been accustomed to flow. If you apply that to this case, I take it you will have no particular difficulty in determining the rights of these respective parties.

If I happen to own a piece of land on the side of a hill and my neighbor the property lower down, necessarily the rain water falling upon my ground will flow down upon the property of the neighbor and pass off in the course of nature. Our rights are fixed by the necessities of the case, and neither of us can interfere with the rights of the other. The party below could not construct a bulkhead which would throw the water back upon me and make a ditch or a pond upon my land; nor could I collect the water which ordinarily would flow in small quantities along a considerable line into one stream, and cast that upon my neighbor in a body, because that might be seriously injurious to him, while it would, of course, if done at all, be for my benefit at his expense. Neither of us are permitted to do those things. We are compelled to leave the water shed as we find it, or protect ourselves upon our own property. In the one case the party below would be at liberty to collect the water in any way he chose upon his own land and divert it as he saw fit, if it did not injure some of his neighbors, and so the party above would be at liberty to collect it in one stream and cast it off in some other mode than the ordinary provision of nature, provided he saw that no injury was done to his neighbor, who would otherwise have received the water in small quantities. The same rule applies to the construction of a road that applies to the occupants of respective pieces of land. It would be a rather unusual roadway that could be constructed without accumulating the water beyond what would ordinarily be the case if it flowed over the land, as it remained unbroken—as found in nature. In order to protect the roadbed it is necessary to have water tables upon either side; and along the side of the hill, as this seems to have been, it would be necessary to exclude the water from the bed of the road and throw it upon either side, and in that way water would be accumulated beyond the ordinary fall of water flowing over the surface of the ground. Those who maintain a public highway are no more at liberty to disregard the laws of nature and the results of their own acts than an individual, and they are liable if they do. If they create a stream—temporarily, it may be, during a rain storm—upon the side of the road, they can not cast that over upon any neighboring ground without reference to the rights and interests of the people abutting upon that road. They are bound

[Huddleston *v.* Borough of West Bellevue, &c.]

to follow it and see that it does no harm. We all know it is very customary, in the construction of roads, to cast the water over wherever it seems most convenient, without much consideration for the rights of the people along the roadside, and in many instances so little damage does it do, or there is some other compensation for it, that it is not often controversies arise; but when they do, we have to apply the strict rules of the law.] (Tenth assignment of error.)

[Now, if it be, as is alleged, that Mr. David Shafer, the ancestor of the plaintiff, closed up an outlet which, according to the testimony of some of the witnesses, had to be plowed into this land in order to carry the water off from the roadbed—it did not flow off, but it was necessary to plow a ditch in order to carry it off—if he found that an undue quantity of water was cast upon his property at that point, to his injury, beyond what nature would have cast upon it, he had a right to stop it up and throw it back upon the road or in the water tables, and allow the supervisor or other authorities to take care of it as they ought to do; and it was a matter of no concern to him where it went afterwards. He was not bound to look after anybody but himself. He had a right to cast it off his premises, if there were an excess of water beyond what nature would have cast upon them at that point. And therefore, if you find that Mr. David Shafer did close up this place, and closed out only such excess as was cast upon him by the construction of the road, or beyond the ordinary flow from nature, he had a right to do it, and you need not trouble yourself about the effect upon these plaintiffs.] (Eleventh assignment of error.)

There have been phrases used to the effect that Mr. David Shafer selected as it were, the property of Mr. Shaw to cast this water upon. I do not understand them to be more than phrases used by witnesses. We have the testimony of two witnesses that it did not go down Mr. Shaw's ground at all in the first instance, but that it flowed off at certain points on property which is now the property of Mr. Glendenning, which was then Mr. Shafer's, and that there was no other place that the water, if cast off the ground of Mr. Shafer, could flow down, except where it is said to go now. But that does not make any difference. It does not make any difference whether that is the lowest point on the road. That may have been the proper place for this water to be cast off in this road, and the law of the land has provided for that contingency. But that contingency is not to cast the water on your neighbor without making compensation. The road law provides that the supervisor shall have power and authority to enter upon any lands or enclosures, and cut, open, maintain and repair all such drains or ditches through the same as they shall judge necessary to

carry the water off said road. The law provides for the very matter which is involved here, but there is no evidence that the supervisors took upon themselves the exercise of the power and the duty cast upon them by the road law, to provide a place upon which this water should be wasted. When they did that, then the property holder would have a right, not to close it up, but a right to compensation.

Now, as to the parties defendant, that are involved here. It is contended that no recovery can be had against either of these parties defendant, partly at least because they are not jointly liable. They are not jointly liable in the ordinary sense, probably, of an action of tort, but, in my judgment, they are liable in this action under a certain state of facts, if you so find them, though you may not be able to say they are jointly liable.

If you find that the borough of West Bellevue, when constituted, found that this road, which was within its control and authority, and which it was bound to take care of, was casting water down upon Killbuck township in excess of the flow which would have necessarily gone there had that road not been constructed, West Bellevue could not cast that water upon Killbuck township and let it go whither it might. They were bound to follow it and see that it did no damage to anybody below. They knew it was not going to remain where they cast it, but that it would necessarily flow somewhere and find some outlet either provided by the supervisor, under the law, or just by permission, over the soil of some property holder. They could not throw that burden upon Killbuck township, nor could they disregard their duty. They were bound to follow that water and see that no injury was done. If that be the case, though it may be, and of course is the fact, that the water from West Bellevue, alone, may not have done the damage complained of, or may not have done any of it; and that is a question of fact for you, which you will determine under the evidence. I do not undertake to instruct you on the facts, but it was caused by the addition of the water which fell upon and alongside of the road in Killbuck township; yet, if the two flowed together, united in one stream, and thus created the injury complained of, this action could be maintained and both parties would be liable if the facts warranted it. The other facts of course you will determine.

[Now as to the respective liability of the defendants; I have a point from either party on that, but I will not take the time to read them, as I cannot affirm either of them as they stand. They are to the effect, on the one hand, that not being jointly liable, no recovery can be had; and on the other, that the recovery would be against both defendants for the amount of

[Huddleston *v.* Borough of West Bellevue, &c.]

damage done by the most culpable. I cannot so instruct you under the facts of this case and the law as I understand it.

I instruct you, if the plaintiff recovers at all, she must recover only the damage done by the least culpable, otherwise we would have one party, possibly, compelled to pay for damage which he did not do and had no necessary part in contributing to; consequently your verdict, if for the plaintiff, and against both defendants, will be for the amount of damage you find was done by the least culpable of the two parties defendant.] (Taken to be the answer to the plaintiff's fifth point, ninth assignment of error.)

[I am also requested to instruct you upon the measure of damage, as to replacing the land in its old condition. I do not so instruct you. That is a matter which you can take into consideration so far as it will afford you light in ascertaining the amount of damage done. You will determine what will be compensation to this plaintiff for the damage done by these defendants, if any, up to the time of bringing this action, and you can take into account the testimony as to the cost of filling up the cut and any other testimony in the case which will enable you to ascertain the amount of damage, if any, which you may find to be properly assessable upon the least culpable of these parties.] (Taken to be the answer to the plaintiff's fourth point, eighth assignment of error.)

The other points of the respective parties, except so far as covered by the general charge, are refused.

[The court sent for the jury after they had retired and instructed them as follows:]

Gentlemen: In making my charge, I omitted certain instructions which doubtless would mislead you. From what I said it is more than probable you would understand that you would either have to find a verdict for the plaintiff, against both defendants, for some sum, or in favor of both defendants. That is not the rule. You can find one of three verdicts in this case. You can find for the plaintiff against both defendants, or you can find a verdict against either one of the defendants, leaving the other out, and specifying which one you find against, or you can find a verdict for the defendants generally. The facts of course are entirely for you, and you will determine the questions according to the facts as they have been delivered in evidence.

Verdict for the defendants and judgment thereon, whereupon the plaintiff took this writ assigning for error, as indicated, the admission of evidence, the answer to the plaintiff's points, and those portions of the charge included in brackets.

*N. W. Shafer* for plaintiff in error.—An owner of land has

no right to rid his land of surface water or superficially perco-
lating water by collecting them in artificial channels, and dis-
charging it through or upon the land of an adjoining proprie-
tor. This is also the civil and common law, and a municipal
corporation has no greater right in this respect than a private
land owner: Gould on Water Courses, §§ 271, 272, 596.

While it is admitted that a municipal corporation is not lia-
ble for incidental injuries to private property, resulting from
the exercise of its legislative powers, such as grading streets
where the property is no way invaded, yet such a corporation
is responsible for direct injuries to private property caused by
a corporate act in the nature of a trespass. See cases there
cited: Pumpelly v. Green Bay Co., 13 Wallace, 166; Ari-
mond v. Green Bay Co., 31 Wis., 316; Eaton v. R. R. Co., 51
N. H., 504; Rowe v. Portsmouth, 3 American Law Times,
Reports, N. S., 482.

A municipal charter never gives, and never could give, au-
thority to appropriate the freehold of a citizen without com-
pensation, whether it be done through an actual taking of it
for streets or buildings, or by flooding it so as to interfere with
the owner's possession. His property rights are appropriated
in the one case as much as the other: Ashley v. Port Huron,
35 Mich., 296; Pumpelly v. Green Bay Co., 13 Wallace, 181.

Under the Constitution of 1874, art. 16, sec. 8, "municipal
corporations are liable for the taking of plaintiff's land for the
purposes of this drainage. That section provides for the
making of compensation, not only for the taking of private
property for public use, as was the case theretofore, but for
its injury and destruction:" City of Reading v. Althouse, 9
W. N. C., 23.

*A. M. Brown* for Borough of West Bellevue; *Robb & Fitz-
simmons* for Killbuck Township.—1. The first, second, third
and fourth specifications of error are to the admission of testi-
mony tending to show that David Shafer established the arti-
ficial mode of drainage at the side of the public road, which is
the ground of complaint in this section. The defendants al-
leged that the land of Mrs. Huddleston was, by the acts of
David Shafer, made servient to the drainage from the public
road; that he not only created the artificial channel, but main-
tained it during his life time; and that the property descended
to his daughter, the plaintiff, subject to that burden, and that
it continued in that condition, without objection on her part,
until about the date of the commencement of this suit. An
easement created by the owner of two estates, notorious, per-
manent and visible, ripens into a servitude and passes to the
sheriff's vendee of the dominant estate: Fidelity Building

Association *v.* Getty, 2d W. N. C.. 490; Walsh *v.* Mallon, 2d W. N. C., 444; Cannon *v.* Boyd, 73 Pa. St., 179; Murphy *v.* Bedford, 35 Legal Intelligencer, 262; Hulburt *v.* Firth, 10 Phila., 135.

2. The plaintiff in error complains that the court erred in not affirming his points, and in only referring to them "in a lumpy way." Although it is the duty of the court under the act of 24th of March, 1877 (P. L., 38), to reduce to writing their answers to the several points presented and to read them to the jury, yet their omission to do so is not ground for reversal; it is sufficient on error that the points were sufficiently answered in the general charge: Scheuing *v.* Yard, 88 Pa. St., 286.

Points may be carefully framed, but as remarked by HUSTON, J., in Coates *v.* Roberts, 4 Rawle, 112, "are often drawn with as much care as candor." He emphatically denies that propositions of counsel must always be answered precisely as put, giving as the reason that the jury must find on all the facts, and not on a partial view: Rush *v.* Lewis, 9 Harris, 72; Utt *v.* Leong, 6 W. & S., 174; Crowell *v.* Meconkey, 5 Barr, 176; Lycoming Insurance Co. *v.* Schreffler, 42 Pa. St., 188; Arbuckle *v.* Thompson, 37 Pa. St., 170.

3. We contend that the plaintiff misjoined the defendants in this suit. Without joint action, no suit could be brought against them: Adams *v.* Hall, 2d Vermont, 9; Vansteenburg *v.* Tobias, 17 Wendell, 562; Buddington *v.* Shearer, 20 Pickering, 477; Auchmuty *v.* Ham, 1 Denio, 495; Partenheimer *v.* Van Order, 20 Barbour, 479; Seely *v.* Alden, 61 Pa. St., 306; Little Schuylkill Navigation R. R. & Coal Co. *v.* Richards, 57 Pa. St., 142.

These cases also state the rule governing the computation of damages to be recovered in such cases. See also, Gould *v.* McKenna, 86 Pa. St., 297.

Mr. Justice PAXSON delivered the opinion of the court, January 4th, 1886.

It was error to admit the evidence of Thomas Paisley, contained in the first assignment of error. It was irrelevant; it had nothing to do with the issue before the jury. It was, however, entirely harmless. It could have injured no one, and if there were no other error we would not reverse for such a cause.

It was more serious error to admit the declarations of David Shafer, referred to in the second assignment. Shafer was the father of the plaintiff and was her predecessor in the title. The defendants proved by several witnesses that while Shafer was the owner, and several years before his death, he closed

up a drain which turned the water from the road upon a portion of the premises then owned by him; that the effect of closing this drain was to stop this flow of water and to turn it down the public highway until it reached the place where it was discharged upon the Shaw lot, where the washout occurred. Hence the defendants contended that the injury of which the plaintiff complains was in reality caused by the defective drainage made by her predecessor in the title; that by thus stopping up said drain he had fixed an easement or servitude upon this property, which was visible to the eye, and that his successor in the title took it subject to such servitude; hence that his declarations made at the time the drain was changed were competent evidence against the plaintiff.

The theory of this branch of the defence is based upon mistaken premises. David Shafer imposed no servitude upon his property. On the contrary he prevented the water from flowing upon his land and turned it back, as before stated, upon the public highway, in Killbuck township. If he had turned the water upon his land there would have been more show of reason in this proposition. It is said, however, that the effect of this action on his part was to carry the water along the gutters or water tables of Beaver road, upon a down grade, until with its large accumulations it was discharged upon the Shaw lot. Conceding this to be so, what follows? As his right to stop this drain was never questioned in Mr. Shafer's life time nor since, we must assume that it was lawfully done. It may be he thought that more than his share of the water was discharged upon his land, or he may have done it, as was stated by some of the witnesses, to keep his lot dry for picnic parties. Be that as it may, he stopped the flow of the water over his land by closing the drain, without objection from the municipal authorities, and turned it down the road. He was not responsible for its further flow. It was the business of the township to look after that. Shafer was not bound to follow it up and see where it went to. Nor had the township any more right to throw it upon the plaintiff's land further down the road than upon the land of any other citizen. Moreover, it was the business of the municipal authorities to protect his land from any such injurious overflow. The fact that Shafer bought the Shaw lot afterwards, and that it has now come into the possession of the plaintiff, in no way affects the case. She has the same right to have her property at this point protected as any other citizen would have if he owned it. We see nothing to justify the admission of Mr. Shafer's declarations in evidence.

For the same reason we sustain the third assignment.

I am unable to see the relevancy of the testimony of John

Birmingham, contained in the fourth assignment. An inquiry as to the expense of taking the water across the road at the point referred to was not pertinent to the issue. It was, moreover, well calculated to prejudice the case of the plaintiff. It may be that after collecting the water in the highway for this long distance, it might be an expensive thing to turn such a volume of it across the road at this point. That, however, was not the question. Aside from this, the witness was not an engineer, nor a road builder, and was not shown to have had any knowledge upon the subject.

The plaintiff's second and third points should have been affirmed distinctly and without qualification. By the first point the learned judge was asked to say to the jury that: " If you find that this Beaver road runs along and through land the surface drainage of which is naturally down depressions and ravines leading from said road directly to the Ohio river, and that instead of the said drainage being conducted into such natural drainage or permitted to flow to the river therein, it is accumulated and carried on by artificial drains on the sides of said road and by artificial embankments held therein, the party or parties so accumulating it, if damage is done, are liable for it."

The third point stated substantially the same principle, in slightly differing phraseology.

The answer to them was: " The other points of the respective parties, except so far as covered by the general charge, are refused."

This is a very unsatisfactory way of answering points. It renders the point of no possible value with the jury, and always adds greatly to our labors. We are often compelled to go again and again through a long charge to see if it covers the respective points. If the practice is continued, and especially if it increases, some of our earlier decisions will have to be modified, and a more literal compliance with the Act of Assembly enforced.

For the purposes of this case we must regard the plaintiff's second and third points as refused. No jury could gather their affirmance from the general charge.

The drainage of water appears to have been conducted from Delp's land in Bellevue borough, in two gutters, one on each side of the road, a distance of about 1,462 feet to the line of Killbuck township, and that just over the line of said borough the said township joins said gutters by a culvert in the road, and by these drains thus united the surface water flow of rains and storms was accumulated and carried the further distance of about 800 feet, without any outflow from the road. Now, if the fact be, as the points assume, and the

jury were asked to find, there were along this long distance several natural drains or ravines down which the water could have been turned and thus discharged into the Ohio river, it is too plain for argument that the accumulation of it until it was liable to become a destructive flood would render the persons or authorities by whom it was done responsible for all the consequences of such accumulation.

The eighth assignment raises the question as to the measure of damages. Upon this point we see no serious error in the charge of the court. The jury were instructed that they might give such damages for the injury as they thought the plaintiff had sustained, and that in estimating them they had a right to take into consideration the cost of filling up the cut caused by the washout. Nothing was claimed beyond compensatory damages.

The ninth assignment raises the question of the respective liability of the defendants, if liable at all. The learned judge instructed the jury that, "If the plaintiff recovers at all, she must recover only the damage done by the least culpable; otherwise we would have one party possibly compelled to pay for damages which he did not do, and had no necessary part in contributing to; consequently your verdict, if for the plaintiff against both defendants, will be for the amount of damage you find was done by the least culpable of the two parties defendant."

The first thought suggested by this ruling is that the plaintiff may not recover the full amount of damage, if any, she has sustained. If this be so, there must be error somewhere. Either the charge must be incorrect, or a mistake has been made in joining the two municipalities in one suit. If the injury be their joint act the plaintiff is entitled in a suit against both to recover the full amount of loss she has sustained. For a tort committed jointly the law will not apportion the guilt or responsibility of the tort feasors, but holds them all for what the most culpable ought to pay: McCarthy v. De Armit, 1 Pennypacker, 297. The rule laid down by the learned judge was that the jury should find only for the injury done by the least culpable of the defendants. This is the rule when punitive damages are claimed, and as such damages were not claimed in this case, it does not apply.

Little Schuylkill Nav. Co. v. Richards, 7 P. F. S., 142, and Seely v. Alden, 11 Id., 302, are not in point. They were both actions for polluting a stream of water; the acts of the respective defendants were clearly several, and it was ruled that one defendant could not be held for the tan or coal dust thrown into the stream by another defendant. In the case in hand the borough of Bellevue collects its water and carries it along

the road until it reaches the line between the borough and the township. There the borough discharges it upon the highway in Killbuck. If the latter receives it without objection, then the township becomes responsible for its further flow. I am unable to see how the borough can be held liable to the plaintiff for water poured, not upon her land, but upon Killbuck township. But as this point was not raised it will not now be decided.

We see nothing in the remaining assignments of error which requires discussion.

> Judgment reversed, and a venire facias de novo awarded.