# Matlack v. Callahan, Appellant.

*Waters—Natural water course—Obstruction—Rights of upper riparian owner.*

A lower riparian owner is bound to receive water as it naturally flows from the land of an upper riparian owner, and permit it to pass without artificial obstruction, whether that obstruction results from intentionally damming the stream, or the construction of an artificial substitute for the natural channel. For any injury resulting to the property of the upper owner from an interference with this easement, the lower owner must answer in damages.

Where the lower owner has taken title to property through which his predecessors in title has constructed an artificial drain as a substitute for a natural water course, the lower owner is liable to the upper owner for a flooding of the latter's land, whether such flooding is caused by a faulty construction of the inlets to the drain in a street on the lower owner's property, or by reason of the drain confining the water to a straight channel instead of allowing it to spread, or by reason of an increased flow of water caused by the erection of buildings and the macadamizing and construction of streets and inlets therefrom.

The mere fact that township authorities have repaired a manhole to a private drain under a public highway is not sufficient to show that the township has assumed control of the drain and adopted it as part of the drainage system. The repair of such a manhole is but an incident of the maintenance of the highway for which the township is liable.

Argued Dec. 9, 1903. Appeal, No. 202, Oct. T., 1903, by defendant, from judgment of C. P. Montgomery Co., March T.,

1902, No. 7, on case tried by the court without a jury in suit of J. B. Matlack v. Mary A. Callahan. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Trespass to recover damages for flooding of land.

The case was tried by WEAND, J., without a jury by agreement of the parties under the Act of April 22, 1874, P. L. 109.

The court below reported the facts to be as follows:

Prior to 1894, " the Bingham estate " was the owner of a large tract of land in Lower Merion township, through part of which there was an ancient water course draining an area of from fifteen to twenty acres of territory.

This water course was originally across the lot now owned by defendant, and to relieve this ground an iron pipe eighteen inches in diameter was placed by the said estate in the bed of the water course through now defendant's ground onto other ground of the estate laid out as a street and now a public road of the township, known as Thomas avenue. The entire length or front of defendant's property abuts on this avenue.

Defendant acquired title subsequent to the laying of said pipe, and has since erected a dwelling house on the premises.

Other owners of land adjoining the water course afterwards built a covered sewer to take the place of the original water course and connected it with the iron pipe at the corner of what is now defendant's lot; and where her lot adjoins that of Timothy Quinlan, he built a manhole, but on defendant's ground. The natural flow of the water is through the sewer and into the pipe.

The water course is crossed by Warner avenue, Prospect avenue and Merion avenue before reaching defendant's ground and the water from those streets empty into it through inlets.

The iron pipe after leaving defendant's ground conducts the water into a manhole in Thomas avenue, and is then diverted into an angle or whatever the direction of the course might be beyond it, and this also occurs at an inlet or manhole where the pipe leaves Thomas avenue and enters an alley from which it enters the Roberts road where there is a similar inlet.

These manholes from their faulty construction form obstructions to the free passage of the water, collects the debris by

456     MATLACK *v.* CALLAHAN, Appellant.

Statement of Facts—Assignment of Error.   [25 Pa. Superior Ct.

forming lodgments, and thus backs up the water through the pipe and sewer onto defendant's land.

Since the laying of the pipe and the building of the sewer a number of dwellings and buildings have been erected adjacent to the water course and on the ground previously drained into it; this, with the constructions of the avenues, causes an increased flow of water into the water course, and the sewer prevents the water, debris, sand, etc., from spreading onto the bank of the course as formerly, and is carried through the sewer.

Defendant acquired title in 1897. For some time previous to the beginning of this suit the water from the pipe and sewer came out of the inlet at Prospect avenue and found its way into the cellar of plaintiff's house causing damage thereto.

The eighteen-inch pipe is of sufficient size to carry off the water except in extraordinary floods. The damage is caused by the inlets or manholes on Thomas avenue, the alley and Roberts road.

Plaintiff acquired paper title in 1898 (but owned it from 1893).

We find as a matter of fact that the damage to plaintiff's property is caused by the backing up of the water and consequent injury to plaintiff, (*a*) by reason of increased flow of water into one channel caused by the erection of buildings, macadamizing and constructions of streets and inlets therefrom, (*b*) by reason of the sewer which confines the water, debris, etc., into a straight channel instead of allowing it to spread, and (*c*) principally by reason of the faulty construction of the inlets on Thomas avenue, the alley and on Roberts road. The drainage from causes (*a*) and (*b*) did not change the relations of defendant as the natural water course was subject to receive the water from streets and land over which it naturally flowed.

The township has done nothing to show that they have adopted the pipe on Thomas avenue as part of their drainage system.

The court entered judgment for plaintiff for $150. Defendant appealed.

*Error assigned* was the judgment of the court.

*Montgomery Evans,* with them *John M. Dettra, James B. Holland* and *Anthony A. Hirst,* for appellant.—It would seem to be an absurdity to hold the owner of property liable for an obstruction of a water course, which obstruction is not on her land and which she had nothing to do with originally, has had no control over since, and could not acquire control of unless the township of Lower Merion and the owners of adjoining property, and the successors of the Bingham estate in title to the bed of the street, should confer such control upon her: Bierer v. Hurst, 155 Pa. 523.

The duty of the township that adopts a sewer or water course for the purpose of draining its streets therein has been repeatedly declared by the Supreme Court: Blizzard v. Danville Bros., 175 Pa. 479; Huddleston v. West Bellevue, 111 Pa. 110; Torrey v. Scranton, 133 Pa. 173; Elliott v. Oil City, 129 Pa. 570; Bohan v. Avoca Borough, 154 Pa. 404.

*Henry M. Brownback,* for appellee.—When the servient tenant diverted course of the stream and confined it in a pipe, for his own purposes, and that pipe was too small to carry off the water naturally flowing to it, or if he permitted the pipe to become clogged, and by reason whereof it was dammed back upon the plaintiff's premises and he was damaged, the plaintiff is entitled to his redress for the wrong done: Glass v. Fritz, 148 Pa. 324; Kauffman v. Griesemer, 26 Pa. 407.

The defendant, who became a subsequent purchaser of the premises, is likewise liable; when she bought she was affected with notice of the true origin and history of the easement, and can derive no rights thereto inconsistent with such origin and history: Hunter v. Wilcox, 23 Pa. C. C. Rep. 191; Geible v. Smith et al., 146 Pa. 276; Cannon v. Boyd, 73 Pa. 179; Overdeer v. Updegraff, 69 Pa. 110; Zell v. Universalist Society, 119 Pa. 390; Gunson v. Healy, 100 Pa. 42; Pierce v. Cleland, 133 Pa. 189.

The owner of land through which a stream flows may increase the volume of water therein by draining it, without liability for damages to a lower owner; but he cannot, by an artificial channel, drain water standing upon his own land upon that of another: Miller v. Lauback, 47 Pa. 154; Robinson's Est., 149 Pa. 418.

OPINION BY PORTER, J., July 28, 1904:

The plaintiff brought an action of trespass to recover damages for an injury alleged to have been sustained by his property through the obstruction of a natural water course upon the lands of plaintiff lower down. The case was by an agreement of the parties duly submitted to the decision of the judge of the court below, without the intervention of a jury, under the Act of April 22, 1874, P. L. 109. The court below after a full hearing found for the plaintiff and entered a judgment in his favor, and the defendant appeals.

The trustees of the Bingham estate were, in 1894, the owners of a large tract of land in Lower Merion township, through part of which was an ancient water course, through which the lands of the plaintiff situated higher up the stream naturally drained. This water course ran diagonally across the lands now owned by the defendant. The trustees of the estate undertook to improve the property for the purpose of selling it in lots, and laid out a number of streets, one of which was Thomas avenue. They substituted for the natural water course a pipe eighteen inches in diameter, which instead of following the diagonal course across the land now owned by the defendant ran through said property on a line almost perpendicular to Thomas avenue and then turning at right angles ran along Thomas avenue, in front of the lands of the defendant, and between that land and the center line of the street to a point opposite an alley which they had laid out on the plan, from which point the artificial drain crossed Thomas avenue and ran through said alley to Roberts street. This artificial drain intersected the former natural one at the rear line of defendant's property, where the same adjoins property now owned by Quinlan, and after passing through defendant's land to Thomas avenue and along that street it again intersected the natural drain where the latter left defendant's land, and almost opposite the alley into which the artificial drain turned. Manholes to this drain were constructed at each of the turns which it made in Thomas avenue. The defendant acquired title through the Bingham estate, after this work, changing the natural water course, had all been done. The deed of the defendant does not seem to have been offered in evidence, but it is an undisputed fact in this case that Thomas avenue, after having been improved by

the trustees of the Bingham estate, has been accepted by the township authorities as a public highway, and for a number of years has been used as such. In the absence of evidence to the contrary, it must be presumed that the defendant has title to the land in front of her property to the middle of Thomas avenue. The plan which has been printed in the paper-book of the appellant and the evidence upon which the court below passed clearly indicate that the artificial drain from the point where it leaves the lands of Quinlan to the point on Thomas avenue where it turns and runs in a northwesterly direction, through the alley, to Roberts street; and that both the man-holes communicating with the drain on Thomas avenue are within the lines of defendant's property.

The learned judge of the court below found the following. facts, which findings have not been assigned for error and must be accepted as true: For some time prior to the bringing of this suit the water, during rains, was backed up and came from this pipe which had been substituted for the natural water course causing damages to the property of plaintiff; that this backing up of the water was produced by three causes: " (*a*) by reason of increased flow of water into one channel caused by the erection of buildings, macadamizing and construction of streets and inlets therefrom ; (*b*) by reason of the sewer" (the pipe substitute for the natural drain) " which confines the water, debris, etc., into a straight channel instead of allowing it to spread; and (*c*) principally by reason of the faulty construction of the inlets on Thomas avenue, the alley and on Roberts road. The drainage from causes (*a*) and (*b*) did not change the relations of defendant as the natural water course was subject to receive the water from streets and land over which it naturally flowed." The learned judge also specifically found that, " These manholes from their faulty construction form obstructions to the free passage of the water, collect the debris by forming lodgements, and thus back up the water through the pipe and sewer on to the plaintiff's land." The man-holes, or inlets, were in exactly the same form and location in which they had been constructed by the predecessor in title of the defendant, when the pipe drain was substituted for the natural water course.

The defendant took title to her property subject to an ease-

ment for drainage in favor of the land of plaintiff. She might have restored the natural condition, reopened the natural water course and permitted the water to flow from plaintiff's land unimpeded; she elected, however, to continue the artificial substitute which had been constructed by her predecessor in title. She was bound to receive the water as it naturally flowed from the defendant's land, and permit it to pass without artificial obstruction, whether that obstruction resulted from intentionally damming the stream or the construction of an artificial substitute for the natural channel. For any injury resulting to the property of the plaintiff from an interference with this easement the defendant must answer in damages : Bierer et al. v. Hurst, 155 Pa. 523 ; Glass v. Fritz, 148 Pa. 324. The learned counsel for the appellant does not question the correctness of the findings that the land of the plaintiff was subject to the easement; that the overflow was caused by reason of the artificial drain which confined the water instead of allowing it to spread, and that the principal cause, of said overflow was the faulty construction of the inlets, or manholes. His contention is that the defendant was not responsible because the manholes were within the lines of Thomas avenue; that she was not bound to take care of the increased flow of water caused by the erection of buildings in the neighborhood and the grading and macadamizing of streets, and that the township had assumed the duty of taking care of this artificial drain, or sewer. The first ground upon which the defendant seeks to escape liability is not well taken. The presumption is that her title extends to the middle of Thomas avenue and that includes the drain, with its manholes or inlets. The artificial drain, from a point where it begins at the line between the lot of defendant and that of Quinlan to the point where it intersects the old water course in Thomas avenue near the intersection of the alley mentioned, is a substitute for the natural channel diagonally across defendant's land. The natural channel has unquestionably been obstructed, and when the defendant relies upon an artificial substitute to do that which the plaintiff had a right to have done, the burden is upon her to show that the substitute is reasonably sufficient. There was no evidence that there was an additional flow of water from the land of the plaintiff, or through it, because of anything which had been done in

the neighborhood. If any increased flow of water naturally resulted from the erection of buildings in the neighborhood, that water must be permitted to flow in its natural channel. The only evidence in this case which indicated that water had been brought into this drain which would not naturally have fallen into the old water course related to the grading of certain streets in the neighborhood, which had probably caused an additional flow along Warner avenue. This water came into the drain below the lands of the plaintiff, and he was not chargeable with the consequences. If the township authorities in grading the public highways cast upon the land of the defendant water which would not naturally have found its way there, she was entitled to compensation, but her remedy was against the township: Huddleston v. Borough of West Bellevue, 111 Pa. 110; Elliott v. Oil City, 129 Pa. 570; Torrey v. Scranton, 133 Pa. 173. If the township or other owners of the upper ground wrongfully directed an unnatural quantity of water into this natural water course, or the artificial substitute upon which the defendant relied to take care of the natural flow, the defendant would have been entitled to compensation from those responsible; but she could not justify the erection or maintenance of an artificial drain so improperly constructed as to prevent the flow of water from plaintiff's land. "A road is a way for travel, not for water; and it would be ruinous to our public roads, if each adjoining proprietor could insist upon discharging the drainage from his land upon them, or preventing the roads from being drained upon his lands. Roads are made for the convenience of travel, and in no sense to relieve the land bordering upon them from the burdens to which they are naturally subservient:" Martin v. Riddle, 26 Pa. 415; Kauffman v. Griesemer, 26 Pa. 407. There was no evidence which would have justified the finding that the township had assumed control of this pipe and adopted it as part of a drainage system. The only evidence that the township authorities had ever done any work about the drain tended to establish that at the time the township assumed control of Thomas avenue as a public highway, the supports of one of the manholes were found to have caved in and the township authorities repaired the defect. The authorities were bound to keep the street safe and convenient for travel, and the repair of the manhole was but an inci-

dent of the maintenance of the highway. "A municipality may connect its drains with any natural channel for the flow of water, without incurring the liability to keep this channel open to its mouth; and the right or liability is not changed, though the state or the owners of the lot through which the drain channel passes have provided an artificial and covered substitute in place of the natural channel. Where the corporation occasionally makes repairs on the sewer substituted for the natural channel, that fact is no evidence of a voluntary assumption of the duty of maintaining it on the part of the municipality; it is not a case of dedication to public use, whereby the corporation becomes bound to repair by adopting it, so that the making of the repairs becomes evidence of adoption: " Munn v. Pittsburg, 40 Pa. 364. The natural flow of the water being undisputed, and its obstructions having been found upon sufficient evidence, we find no error in the conclusion reached by the learned judge of the court below.

The judgment is affirmed.