## H. L. BENNETT v. M. D. BIDDLE.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF CHESTER COUNTY.

Argued February 11, 1891—Decided March 2, 1891.

[To be reported.]

1. The rule that mere possession, however long continued, will not give title under the statute of limitations, is applied to a right of way claimed by prescription. In order to give title, such right must not only have been enjoyed without interruption for twenty-one years, but that enjoyment must have been adverse to the right of the owner of the land.

2. When each of two brothers, owning adjoining farms, permitted the other to pass over his fields as a matter of mutual accommodation, and, after the title of one had passed to a stranger, such travel was continued for more than twenty-one years, but in the same spirit of accommodation, the user by neither party was adverse to the other, and no easement was acquired thereby.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 135 January Term 1891, Sup. Ct.; court below, No. 19 October Term 1889, C. P.

On August 27, 1889, Henry L. Bennett brought trespass against Mary D. Biddle, to recover damages for the obstruction by the defendant of an alleged right of way of the plaintiff over the defendant's land. The defendant pleaded not guilty.

At the trial on May 26, 1890, the following facts were shown:

Jacob Bennett died in 1827, seised of a tract of land in Birmingham township, Chester county, bounded on the east and on the west by public highways. After his death, the tract was divided into two purparts by a line nearly parallel with each of the said boundaries. His son, John Bennett, became the owner of the purpart east of the division line, and another son, Thomas Bennett, became the owner of the other purpart. John Bennett continued the owner of his tract until his death in 1882, when his son, the plaintiff, became its owner. Thomas Bennett died in 1842, and was succeeded in the ownership of his tract by his son, T. Elwood Bennett, who in 1855 conveyed the same to Abraham Huey. By various subsequent conveyances the title to that tract became vested in the defendant.

While the two tracts were owned by the brothers, John and Thomas Bennett, respectively, a well defined wagon way extended continuously from the public road, on the east of John's property, across both farms, to the public road on the west of the property of Thomas, passing through a gate maintained in the division fence between the farms; and each of the brothers, whenever he had occasion so to do, used it in crossing the land of the other to reach the road which did not touch his own property. This mutual use of the wagon way was continued by the respective owners of the farms, after the death of Thomas Bennett, until 1889, although Huey, and his successors in title, were strangers in blood to the plaintiff. A short time before the bringing of this suit, the defendant placed a fence upon her property, in such a way as to obstruct the wagon way and prevent the plaintiff from passing thereon across her farm. There was testimony tending to show that other persons, beside the occupants of the respective farms, had been in the habit of using the wagon way to cross from one of the public roads to the other.

At the close of the testimony, the court, WADDELL, P. J., charged the jury in part as follows:

### Charge of Court below.

Now, gentlemen, it is not worth while for the court to take up much time, if any, in presenting any further to you the condition of affairs as we understand they existed, and the question for your consideration, under the instructions of the court, simply is, has the enjoyment of this way for this period of time, as far back as at least 1855, been adverse on the part of Mr. Bennett, this plaintiff? That is, has he claimed it as a right against Mrs. Biddle and her predecessors in title?

It is not necessary that he should have claimed it only against Mrs. Biddle; because you will see that she has owned the property only since 1876, and of course he could not have claimed it for twenty-one years as against her; but, if he has claimed it adversely against her and those who have preceded her in title, for twenty-one years, then he acquired a right of which he cannot now be deprived. It is a well-established principle of law that wherever the facts and circumstances of a case show that the use and enjoyment of a way can be ascribed to some other reason than an adverse enjoyment, it is the duty of the court and jury to so attribute it; and, if this way came into enjoyment by the respective owners of these tracts, because they were brothers, and, as the law says, out of comity, that is, out of friendship, the one for the other, then it would not be an adverse enjoyment.

Such may have been the case here. There is nothing in the evidence to show it; and the only way in which that can be reached would be by inference from the fact that these original owners, when this way was probably started, were brothers, and therefore they each had, the one given to the other by reason of friendship or relationship, the right to pass over the property of the other.

[But you will remember, gentlemen, that that condition of things terminated in 1855, when T. Elwood Bennett, who might be regarded as occupying the same position here towards his uncle as his father did, that is, permitting this thing to be done by reason of their relationship, sold his property to a stranger, and that stranger and other strangers have continued to own, occupy, and enjoy it from that time down to this. Thus you will see that as far back as 1855 that condition of things ceased. Now, we say to you that if the origin of this might be attributed to the friendship of these original owners, still a new

Charge of Court below.

condition of things, in the estimation of the court, took place in 1855 ; and, in our opinion, if the owner, Henry L. Bennett, and his father before him, claimed to use this way over the property of Mr. Huey, who became the owner at that time as successor in title,—if he then used, occupied, and enjoyed this way openly and notoriously, such an occupation without opposition on the part of Mr. Huey and those who succeeded him in title was, in our opinion, adverse.] [1]

Neither is it necessary, in the estimation of the court, that that enjoyment should be exclusive ; that is, I should say more truly, that it should be interfered with, because it was mutual. In other words, [that, because Mr. Bennett, this plaintiff, may have claimed and used this way over Mrs. Biddle's property, and the owners and occupiers of Mrs. Biddle's property did the same thing over his, therefore it destroys the idea of adverse occupation and enjoyment. We do not so view the law, that, because these people may have enjoyed this right mutually, the one in consideration of the other, therefore there was a want of adverse enjoyment. I say to you that we do not so consider the law, and in our opinion it will not destroy the adverse occupancy and enjoyment in the one by the other.] [2]

You of course have nothing to do in this case, so far as the rights of these parties are concerned, with the enjoyment by Mrs. Biddle of any right over Mr. Bennett's property. It incidentally, of course, enters into the investigation of this case ; [but the fact that Mrs. Biddle has claimed, or has used, and those who preceded her have used this way over Mr. Bennett, that because she has thus used the roadway over him, therefore it destroys his right to say that he has acquired a right from her. Such, in our opinion, is not the law ; and if he has used and enjoyed this way openly, notoriously, and adversely in the way I have indicated, for twenty-one years, then, in our opinion, he has acquired a right to it, notwithstanding she may have had a right of the same character over his property.] [3]

But you will see, gentlemen, that this enjoyment, while it is not necessarily exclusive, yet it must be in a way that goes to assert Mr. Bennett's rights ; that is, that Mrs. Biddle and those who preceded her in title would have a right to infer that he is crossing her property because he claims the right to do so.

If he crosses it along with other people in the neighborhood,

Charge of Court below.

comes and goes as they do, there is nothing to put Mrs. Biddle on her guard and to learn that he claims this right any more than the general public. In other words, if Mr. Bennett has passed and re-passed over this property, in a way similar to the neighbors in that community and in no other way, then he has done nothing which would give Mrs. Biddle the right to infer that he was claiming the right to come there. Other people were doing the same thing that he was doing; they were passing through these gates and going from one road to another whenever they pleased, and he was doing the same thing. If the testimony satisfies you of that fact, that this is the way the public in that neighborhood were using this road, then we say to you that there is nothing in the cause that would justify you in saying that Mr. Bennett should have the right to enjoy this way, any more than his neighbors who lived around him. But you must be satisfied of that fact from the testimony. . . .

But if you think that Mr. Bennett did use this property for all his purposes in a way different from what the public in that neighborhood used it, then it was notice to Mrs. Biddle, and she was bound to take notice of it; and if she did not assert her rights, or those who preceded her in title did not assert their rights, for twenty-one years, then Mr. Bennett has acquired a right there, and your verdict will be for him. . . . .

The defendant asks the court to charge you as follows:

2. If the jury find that the travel by the plaintiff, and the owners of his property before him, over the defendant's farm, began in the intimate relationship of two brothers who owned the two properties, then the mere fact that those who succeeded one brother, as owner of his property, did not put a stop to the other's habit of passing through it, but let it be done freely as before by the occupant of the other farm, does not give the plaintiff a right of way.

Answer: You will see, gentlemen, from what I have already said in the general charge, that I do not agree with the principle of law as set down by the defendant, and therefore disaffirm that point.[4]

3. If the jury find that the travel from the plaintiff's farm over that of the defendant, was always coupled with similar travel on the continuance of the same track from the defendant's farm over that of the plaintiff, to another highway, then

Arguments.

the case had no one-sided character which raises a presumption that a permanent right to so pass over the one farm was at the same time acquired by the owner of the other; and, if the facts are as stated, the jury must find for the defendant.

Answer: You will see from what I have already said, I do not agree with the principle of law as stated by the point, and therefore disaffirm that point.[5]

—The jury returned a verdict for the plaintiff " in the sum of six cents damages and six cents costs." A rule for a new trial having been discharged and judgment entered, the defendant took this appeal, assigning for error:

1–3. The portions of the charge embraced in [ ] [1 to 3]

4, 5. The answers to the defendant's points.[4 5]

*Mr. E. Spencer Miller* and *Mr. William T. Barber,* for the appellant:

Only two questions which arose in the case are now important. They both relate to the character of the user, by the occupants of the plaintiff's premises, of the way claimed by him, and upon each of them the court charged peremptorily for the plaintiff. This was clear error, as it was a question for the jury whether a given course of user implied a claim of right, or in other words was adverse: Susq. Coal Co. v. Quick, 61 Pa. 328; Demuth v. Amweg, 90 Pa. 181; Gehman v. Erdman, 105 Pa. 371.

1. When a user begins under relations of comity, its continuance by one party, after the other has been succeeded in title by a stranger, will not be interpreted as adverse; and though it be continued for twenty-one years after the intervention of the stranger, no right against him will be acquired thereby: Washb. on Easements, 86; Smith v. Miller, 11 Gray 145; Taylor v. Gerrish, 59 N. H. 569; Susq. Coal Co. v. Quick, 61 Pa. 328; Garrett v. Jackson, 20 Pa. 331; Pierce v. Cloud, 42 Pa. 102.

2. When the user set up is accompanied by a corresponding reciprocal user, which in the nature of things is coupled with it, neither use is adverse, but both must be taken as referable to a current interchange for mutual advantage. The foundation of the rule invoked by the plaintiff is the necessity of supposing a grant for the otherwise unexplained enjoyment of a

right: Ricard v. Williams, 7 Wheat. 59; Arnold v. Stevens, 24 Pick. 106; Cooper v. Smith, 9 S. & R. 26; Washb. on Easements, 67; Haverstick v. Sipe, 33 Pa. 368. Krier's Road, 73 Pa. 109, is not in conflict with the recognized rule that the suggestion of a grant is the true test for a jury. But in any event, the user must be "under circumstances indicating a claim of right."

*Mr. William S. Windle* (with him *Mr. Thomas S. Butler* and *Mr. William Butler, Jr.*), for the appellee:

1. A conveyance of land by an owner who has given to another a parol license to enjoy a right in the nature of an easement, ipso facto determines the license: Washb. on Easements, 7; 2 Wait's Act. & Def., 657; Garrett v. Jackson, 20 Pa. 331; Wallis v. Harrison, 4 M. & W. 538. When, therefore, the defendant's land passed in 1855 out of the hands of the Bennett family, either owner was clearly liable thereafter to an action of trespass for crossing the land of the other, and the neglect of either to assert his right for twenty-one years gave to the other an affirmative easement. The doctrine of prescription does not rest upon the presumption of a grant, but upon length of user, in analogy to the statute of limitations: Stuber's Road, 28 Pa. 200; Krier's Road, 73 Pa. 109. That the use was adverse and under claim of right, may be inferred from its nature and character: Esling v. Williams, 10 Pa. 126; from its frequency and its being known to the owner of the land: Washb. on Easements, 164.

2. When one crosses the land of another whenever he sees fit, without asking leave and without objection, this is an adverse use: Garrett v. Jackson, 20 Pa. 331. Whether the use was adverse is for the jury, but under proper instructions from the court: Worrall v. Rhoads, 2 Wh. 427; Steffy v. Carpenter, 37 Pa. 44. In Smith v. Miller, 11 Gray 145, cited by the appellant, there was no invasion of right by the claimant of the easement; he never went upon the land, or said or did anything to indicate a claim of right, and an invasion of the other party's right is essential: 2 Wait's Act. & Def., 694. That each owner crossed the land of the other, in the present case, if evidence at all, indicates that each gave the other the right of way, and each was crossing under a claim of right: Ashley v. Ashley, 4

Gray 197. Under such facts, the user was adverse : Barnes v. Haynes, 13 Gray 188.

OPINION, MR. JUSTICE WILLIAMS :

The parties to this litigation own adjoining farms. A public road runs on the east side of one of them on which the buildings are located. Another parallel road runs on the west side of the other with the farm buildings upon it. Many years ago these farms were owned by brothers, who passed back and forth across each other's fields, and kept up a gate in the line fence between the farms, to enable them to pass the more readily. In 1855, one of these farms passed into the hands of a purchaser, who was not a relative ; but the occupants of both farms continued to cross from time to time over each other's fields from one house or road to the other. A few years ago the defendant declined to permit further crossing of her fields, and obstructed such crossing by fences. This action was brought to test her right to do so.

On the trial in the court below, the defendant asked an instruction to the jury that, if they were satisfied from the evidence the travel over the fields began in the intimate relations existing between the two brothers who owned them, it would not be an adverse user by either ; and if the successor in title of one of the brothers had permitted and enjoyed the same user, no right would be acquired by mere lapse of time by means of it. The defendant further asked the court to charge, if the jury found the travel by the occupants of these farms over each other's fields was a matter of mutual accommodation, it was not adverse, and no right would be acquired by reason of it. Both points were refused ; and the refusal is now assigned for error.

The question is well settled in cases arising under our statute of limitations that mere possession will not give title, no matter how long continued. There must be an adverse possession to accomplish that result, and the statute will not begin to run in favor of one who entered in subservience to the title of another, until some act is done which destroys the relation. The possession must be hostile, so far as to be independent of, and to that extent adverse to, the title of the' owner : Cooper v. Smith, 9 S. &. R. 26 ; Tinicum Fishing Co. v. Carter, 61 Pa.

21 ; Wheeler v. Winn, 53 Pa. 122 ; Cadwalader v. App, 81 Pa. 194. The same rule applies to a right of way claimed by prescription. The right must not only have been enjoyed without interruption for twenty-one years, but that enjoyment must have been adverse to the rights of the owner of the land, in order to give a title: Okeson v. Patterson, 29 Pa. 22. Where one uses a road over the land of another, without asking leave and without objection, a grant will be presumed; but the presumption may be rebutted, and the user may be shown to have been in subservience to the title of the owner: Garrett v. Jackson, 20 Pa. 331.

If the facts assumed in the points which were negatived by the learned judge of the court below, had been found by the jury, viz., that the travel over these farms began in the intimate relations of the two brothers, who owned and occupied them, and for their mutual accommodation, and was continued, after the title of one of them had passed to others, on the same basis and in the same spirit of mutual accommodation, then we think it clear that the user of neither was adverse to the other, and that no title was acquired by means of it. What the fact was as to the beginning and continuance of the travel between these owners was for the jury. They must determine whether this user has been a friendly exchange of advantages, or whether each has entered and exercised a right of passage adversely to the other. In the latter case only would the lapse of time give title.

> Judgment reversed, and venire facias de novo awarded.