Shinn et al. *v.* Rosenberger et al., Appellants.

Argued April 12, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*George T. Robinson,* of *Gearhart & Robinson,* with him *Russell L. Mervine,* of *Mervine & Mervine,* for ap-lants.

*Grant W. Nitrauer,* for appellees.

OPINION BY MR. JUSTICE PATTERSON, June 30, 1943:

This appeal arises out of a controversy over the use of a non-navigable lake for the purposes of boating, fishing and swimming.

Arthur T. Shinn and Lawrence D. Shinn are owners of a tract of land, comprising about 600 acres, in Middle Smithfield Township, Monroe County. This tract, on which is located thirty-nine fortieths of an entirely non-navigable lake, formerly known as "Seely's Pond", later as "Echo Lake", has been operated by the Shinn family as a summer resort or bungalow colony continuously since 1909 or 1910. The remaining one-fortieth of the lake is included within the lines of a tract of about 150 acres formerly owned by M. D. Turn and used by him in the operation of a summer boarding-house or hotel. Fol-following the death of M. D. Turn, on December 11, 1920, operation of the boarding-house was continued by the Turn heirs until August 30, 1937, when they entered into articles of agreement for the sale of the property to Albert Rosenberger and Elsie C. Rosenberger, his wife. Pursuant to the articles of agreement the Rosenbergers entered into possession of the Turn property early in 1938 and they are in possession, as equitable owners, at the present time.

In 1935, following a dispute with the Turn heirs, the Shinns erected a fence or boom across the lake entirely on their own side of the division line. Before executing the agreement of sale Rosenberger informed the Shinns of his intention to purchase the Turn property and he requested that they remove the boom, thereby making the entire lake available for use by himself and his boarders. This request was refused. In 1939 Rosen-

berger consulted counsel with reference to his rights in the lake and was advised there was a "fifty-fifty chance" he might be successful in asserting a claim to use of the entire lake for boating, fishing and swimming purposes based upon the theory of a prescriptive right. Accordingly, during the summer of 1940 Rosenberger informed his boarders that they might cross over the boom onto the Shinn portion of the lake, if they so desired, and he directed that if the Shinns or their employees attempted to interfere they should be told to "go to hell." Some of the boarders did as directed and the Shinns thereupon instituted this suit in equity asking for an injunction.

At the hearing in the court below the parties entered into a stipulation as follows: "It is stipulated and agreed between counsel for plaintiffs and counsel for defendants that the following facts may be deemed and taken to be established with the same force and effect as though proven by testimony of witnesses from the stand, viz.: That for a period of more than twenty-one years prior to the year 1935 boarders from the property owned at various times by M. D. Turn, later by his son, E. B. Turn, and daughter, Philura Turn, used the waters of Echo Lake for the purpose of pleasure boating in boats belonging to the Turns and for swimming; that the persons using said boats did in fact row over all portions of the lake, and that the swimmers did in fact bathe on any portion of the lake, even though it was beyond the boundaries of the Turn property . . .'. Such use by strangers to the title occurred practically every year and was practiced continuously every year for such portions of said years as is commonly recognized as the 'summer season' in Monroe County, counsel for plaintiffs reserving the right at all stages of this case to contend that such use was merely permissive and not in any sense hostile or adverse, and counsel for defendants reserving the right at all stages of this case to contend that such use was hostile and adverse." The chancellor filed an adjudication in which he rejected the claim of the Rosenbergers

to a prescriptive right and entered a decree nisi granting a perpetual injunction. The Rosenbergers filed exceptions, all of which were dismissed, and a final decree was entered from which they have appealed.

We all agree that the result reached by the court below was the proper one under the evidence. Title by prescription has its foundation in the presumption of a grant arising from the long continued use or possession of some right of common or other profit or benefit to be taken from or upon the land of another. Accordingly, the use must be such as to indicate that it is claimed as a right and is not the effect of indulgence or anything short of a grant: *Gibbs v. Sweet,* 20 Pa. Superior Ct. 275, 284. Mere user, no matter how long continued, will not give title. In order to give title the right must not only have been enjoyed without interruption for twenty-one years, but the enjoyment must have been adverse to the rights of the owner of the land: *Bennett v. Biddle,* 140 Pa. 396, 404. Open, notorious and uninterrupted user for a period of twenty-one years will be presumed to have been in pursuance of a full and unqualified grant, in the absence of evidence of some license, indulgence or some special contract inconsistent with the right claimed: *Pierce v. Cloud,* 42 Pa. 102, 114. But where the evidence produced by the claimant in support of his alleged right to an easement fully explains the manner in which the enjoyment began and is not sufficient to warrant a finding that the owner knew or ought to have known that the use was under a claim of right, the presumption of a grant does not arise: *Carter v. Tinicum Fishing Co.,* 77 Pa. 310, 315; *Gibbs v. Sweet,* supra, 285.

Clarence Van Allen, a witness for appellants, testified on cross examination as follows: "Q. Now, these people were neighbors living within a few hundred yards of each other, were they not? A. Yes. Q. Each one of them was accustomed to row all over that lake, wasn't he? A. Yes . . . Q. This use which was made of the lake . . . for pleasure boating and swimming and that

sort of thing, was all done by permission of these adjoining owners, was it not? A. Yes. Q. Just nothing but a neighborly accommodation, you might say—it was done as a matter of neighborly accommodation, was it not? A. Yes." This and similar evidence given by the other witnesses for appellants—Clinton Warner, caretaker of the Shinn property for many years, his son, Wilmer Warner and daughter-in-law, Ruth Warner—fully justifies the finding of the court below that "the use made of plaintiff's thirty-nine fortieths of this pond or lake by M. D. Turn was a permissive use and, therefore, could not ripen into a right by prescription." True there was no proof adduced by appellees "in exact terms" of a permission granted to M. D. Turn. But such proof was not necessary in view of the uncontradicted evidence of appellant's own witnesses establishing that the user of the lake began and was continued, at least down to the death of M. D. Turn, in 1920, as a matter of mutual accommodation to the respective owners. The user by each of the adjoining owners of the portion of the lake owned by the other being mutually advantageous, it would have been to the interest of neither to have interrupted the user of the other and, consequently, no presumption that the user of either was pursuant to a grant can properly be said to arise.

A somewhat similar situation was presented in the case of *Bennett v. Biddle,* cited supra. There the parties owned adjoining farms. A public highway ran on the east side of one of the farms and another parallel road ran along the west side of the other farm. Originally the farms were owned by brothers who passed back and forth across each other's fields and who kept up a gate in the line fence between the farms, to enable them to pass the more readily. One of the farms passed into the hands of a purchaser, who was not a relative; but the occupants of both farms continued to cross from time to time over each other's fields from one road to the other. The purchaser obstructed the way on her side of the line between

the farms and the owner of the other farm thereupon brought an action in trespass, claiming an easement by prescription. On the trial the defendant asked the court to charge the jury that "if they were satisfied from the evidence the travel over the fields began in the intimate relations existing between the two brothers who owned them, it would not be an adverse user by either; and if the successor in title of one of the brothers had permitted and enjoyed the same user, no right would be acquired by mere lapse of time by means of it." The defendant further asked an instruction that "if the jury found the travel by the occupants of these farms over each other's fields was a matter of mutual accommodation, it was not adverse, and no right would be acquired by reason of it." These points were refused and on appeal this Court held their refusal to be error, stating as follows (p. 404): "If the facts assumed in the points which were negatived by the learned judge of the court below, had been found by the jury, viz., that the travel over these farms began in the intimate relations of the two brothers, who owned and occupied them, and for their mutual accommodation, and was continued, after the title of one of them had passed to others, on the same basis and in the same spirit of mutual accommodation, then we think it clear that the user of neither was adverse to the other, and that no title was acquired by means of it." See also *Fidler v. Rehmeyer,* 34 Pa. Superior Ct. 275, 285.

The case of *Miller v. Lutheran Conference and Camp Assn.,* 331 Pa. 241, relied upon by appellants, is clearly distinguishable. There the only question was whether bathing rights in a non-navigable lake came within the class of incorporeal rights susceptible of being acquired by prescription. We held simply that under the circumstances there presented bathing rights might be so acquired. There was no contention in that case that the user was permissive merely, and no such question was considered or involved.

Decree affirmed at the cost of appellants.