## Pittsburgh & Lake Erie Railroad Company v. Stowe Township, Appellant.

Argued March 31, 1953.  Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ. Appeal, No. 133,

*S. V. Albo,* with him *William F. Cercone,* for appellant.

*J. Leonard Smith, Jr.,* with him *John J. Heard, Paul E. Hutchinson* and *Reed, Smith, Shaw & McClay,* for appellee.

OPINION BY MR. JUSTICE ARNOLD, May 27, 1953:

Defendant, a first class township, appeals from the decree of the court below, enjoining use of plaintiff's drainage facilities by the defendant, to the extent now being made, and also awarding damages to the plaintiff for injury to its property.

The facts found by the court below, all of which were supported by competent evidence, are as follows: Plaintiff's land in the township, acquired in 1878, has been used and occupied ever since by its main tracks, classification yards, yard tracks and other facilities. The land is partially adjacent and contiguous to the Ohio River, and very near to Margaret Street, a duly dedicated street of the township. The fall from plaintiff's property to the Ohio River is very slight. The "surface drainage following its natural course would flow toward and onto the Railroad's said property from an area of approximately 200 acres lying generally south and west thereof," which "area originates at the top of a steep hillside on which there is presently located a housing development known as 'Ohio View Acres.'"

In 1891 plaintiff constructed a stone box drainage system on its property at a point near the northerly terminus of Margaret Street, to receive the surface waters from the north. This was enlarged in 1905. In 1905, defendant built underground sewers throughout the township area for both drainage and sanitary sewage, and the surface waters from the 200 acre area were directed into a 36 inch brick drainage culvert which "terminated at a point on Margaret Street approximately 16 feet south of the inlet to the Railroad's said stone box culvert." All the waters therefrom passed over plaintiff's property into its drainage facilities.

The lower court's 8th finding of fact reads: "In the late fall of 1906, the Township, disregarding the Railroad's protests and without the Railroad's consent, dredged out an open ditch leading from the outlet of its . . . sewer to the inlet of the Railroad's drainage system . . ." This resulted in the Railroad's box culvert becoming blocked with debris and in an overflowing of the drain, with damage to its facilities.

In 1919, defendant built more drainage and sewage facilities, and also constructed a 48-inch tile sewer, extending down Margaret Street parallel with the Township's existing 36-inch drainage culvert and terminating at the foot of Margaret Street. This directed additional water and sewage into the plaintiff's drainage system. Shortly after defendant constructed head and wing walls, thus sending into the plaintiff's drainage system the entire flowage from its two sewers,—a flowage almost 6 times as great as could be handled.

In 1925, plaintiff installed at its own expense a new and larger drainage system, and rebuilt the township's head and wing walls. This system was not designed or constructed to carry sanitary sewage. Plaintiff has never agreed or consented to any increase or change in drainage burden accepted by it in 1925. The court found that the plaintiff is without physical means of selecting the character and volume of flowage it will receive from the township's sewers, and as a physical necessity must receive all types and quantities. The court further found that "there was no agreement between the Railroad and the Township with respect to the location of the Township's sewers and the connection made with the Railroad's drainage system, nor did the Township at any time pay rental or any other amount for the use . . . of the Railroad's drainage system."

In 1941, the Federal Housing Administrator, under federal authority, acquired for a housing project the area referred to as Ohio View Acres, *and the Township,* on November 12, 1941, *contracted with the United States to provide the project with sewer service.* The plaintiff had no knowledge of the project nor of additional concentrations of water and debris. Since 1942 all sanitary sewage from this project is discharged into plaintiff's drainage facilities. To further handle

the sewage and drainage from the area, the Township constructed manholes, drainage pipes, inlets and retaining walls, all of which were unprotected and thus directed onto plaintiff's property debris of all kinds. This condition was known to the defendant. As a result, plaintiff's drainage facilities were blocked, and its property flooded with sediment and debris. The actual cost to plaintiff to remove the debris and restore its facilities was $15,251.55,—the amount awarded as damages. Although defendant attempted changes in its facilities, they were unsuccessful, and it has continued to discharge unfiltered sewage in the same quantity, with consequent offensive odors and the same threats of damage to plaintiff's property.

The court below held that: (1) defendant had acquired a license to use plaintiff's facilities for limited purposes; (2) defendant's use of the plaintiff's drainage system in a manner contrary to the permissive use given by the plaintiff constitutes a trespass, which was the direct and proximate cause of the damage; (3) in undertaking to dispose of drainage imposed upon it by the Federal Housing Authority, defendant became solely responsible for its further flow, and is liable to plaintiff for damages resulting from the concentration and discharge of surface water and debris on plaintiff's land.

Defendant contends: (1) its use of the drainage system was by easement and not by license; (2) having an easement, its present use cannot be enjoined because it is not an unreasonable one, the railroad's facilities being capable of carrying the maximum load from the township's sewers; (3) the Federal Housing Authority, and not the Township, is liable in damages because the former's acts were the proximate cause of loss.

Since there never has been any express grant of an easement by plaintiff, if any exists it must be found

to have been created by implication or prescription. The latter will be upheld only if there is clear and positive proof of its existence: *Stein v. Bell Telephone Co.*, 301 Pa. 107, 151 A. 690; *DePietro v. Triano*, 167 Pa. Superior Ct. 29, 74 A. 2d 710. See also *Shinn v. Rosenberger*, 347 Pa. 504, 32 A. 2d 747. No such evidence was offered. The conduct of the parties throughout the years has been on a friendly basis, is most indicative of an attitude of "allowance" by the plaintiff, and so accepted by defendant. It is undoubtedly one establishing use by "license," as found and held by the court below, "inferred from circumstances in the relationship of the parties": *Baldwin v. Taylor*, 166 Pa. 507, 31 A. 250.

It is also true that hostile or adverse use, to establish the easement, was not sufficiently proved. Defendant does point to the finding that in 1906 plaintiff protested and did not consent to defendant's opening of the ditch between the former's inlet and defendant's outlet. However, it did not go beyond this, and the plaintiff thereafter expended large sums in extending facilities to handle flowage,—certainly not the conduct of one objecting to the use of its facilities, but rather of a benefactor whose charity is accepted by the donee. Mere user does not establish an easement: *Shinn v. Rosenberger*, 347 Pa. 504, 507, 32 A. 2d 747. Not having established it as of 1906, there was no other time at which it could have been acquired. There were admittedly a number of changes in the use made of the facilities, and it cannot be said that any easement to the extent claimed was or could have been created before 1925, and this action was instituted before the expiration of 21 years, the period required to establish it: *Shinn v. Rosenberger*, supra; Restatement, Property, Vol. V, §457. Furthermore, even if there had been an easement, the present acts of defendant were unlaw-

ful, for the right acquired " 'must be measured by the enjoyment of it, and . . . [it] had no right to use it in a different and more extensive manner.' ": *Jones v. Crow*, 32 Pa. 398. See also *Donahue v. Punxsutawney*, 298 Pa. 77, 148 A. 41. Cf. *Davis v. Winsor*, 165 Pa. Superior Ct. 212, 67 A. 2d 569. It cannot be said, as contended by the Township, that the parties must have anticipated the possible increase of the burden, and *Seidler v. Waln*, 266 Pa. 361, 109 A. 643, cannot be held to be controlling in this case, even though this were to be held to be an easement. See also *Heffley v. Lohr*, 149 Pa. Superior Ct. 586, 27 A. 2d 275. Defendant assumes that its use was reasonable, but the findings are to the contrary.

. The contention that the Federal Housing Authority, not the Township, is liable, is untenable. Without the knowledge or consent of plaintiff, this defendant contracted to provide sewer service to the Federal Housing Authority. It supplied inadequate facilities, and as a result of accepting the sewage from the project into its system, it caused the damage to plaintiff's property. See *Huddleston v. Borough of West Bellevue et al.*, 111 Pa. 110, 2 A. 200. It was the defendant's act, not that of the Federal Housing Authority, which created the condition resulting in loss to plaintiff.

Decree affirmed, each side to pay its own costs.