**Donald C. WAIDLICH and Beulah S. Waidlich, his wife, Plaintiffs,**

v.

**The FARMERS BANK OF MERCERSBURG, Defendant.**

**Civ. A. No. 4974.**

United States District Court
M. D. Pennsylvania.

April 1, 1957.

Edwin D. Strite, Chambersburg, Pa., for plaintiffs.

John McDowell Sharpe, Chambersburg, Pa., for defendant.

FOLLMER, District Judge.

Plaintiffs here have sued their adjoining property owner alleging an encroachment by the defendant on plaintiffs and seeking damages and an injunction

restraining further encroachment. The case was tried to the Court without a jury.

On the basis of the pleadings and the testimony, I make the following

## Findings of Fact

1. The plaintiffs, Donald C. Waidlich and Beulah S. Waidlich, his wife, are citizens and residents of the State of West Virginia, residing at Gary, West Virginia.

2. The defendant, The Farmers Bank of Mercersburg, is a banking corporation organized and doing business under the laws of the Commonwealth of Pennsylvania, and has its principal place of business at Mercersburg, Franklin County, Pennsylvania. Prior to its incorporation, and as far back as the year 1881, the defendant was an unincorporated private bank and did business under the name of both the Farmers Bank of Mercersburg, Pa., and The Farmers Bank of Mercersburg.

3. The matter in controversy exceeds the sum or value of Three Thousand ($3,000) Dollars, exclusive of interest and costs, and this Court has jurisdiction by reason of the diversity of citizenship of the parties under the Act of June 25, 1948, c. 646, 62 Stat. 930, 28 U.S.C. § 1332.

4. The plaintiffs are the owners in fee simple of the following described real estate:

All of the following described real estate lying and being situate in the Borough of Mercersburg, County of Franklin, and State of Pennsylvania, consisting of a house and lot of ground, and bounded on the north by land of Caroline Freshholtz' heirs, on the south by land of The Farmers Bank of Mercersburg, on the east by North Main Street and on the west by an alley, and known on the General Plan of said Borough of Mercersburg, Pennsylvania, as Lot No. 6.

5. The said real estate is the same real estate that Catherine Shirts, Administratrix of John Shirts, deceased, by deed dated February 24, 1869, and recorded in the Office for the Recording of Deeds in and for said County of Franklin, Pennsylvania, in Deed Book Vol. 47, Page 426, conveyed to F. C. Waidlich and John Waidlich (grandfather of Donald C. Waidlich); and the widow and heirs of the said F. C. Waidlich, deceased, by their deed dated May 9, 1887, and recorded in said Recorder's Office in Franklin County in Deed Book Vol. 79, Page 424, conveyed the undivided one-half interest of the same to John Waidlich, who died seized thereof; and Henry Spangler, Administrator d.b.n.c. t.a. of the estate of John Waidlich, deceased, by deed dated February 7, 1906, and recorded in said Recorder's Office in Franklin County, in Deed Book Vol. 140, Page 208, conveyed the same to Harry S. Waidlich, who with his wife, by their deed dated December 19, 1929, and recorded in said Recorder's Office in Franklin County, in Deed Book Vol. 236, Page 158, conveyed the same to Frank S. Long, single (straw transfer), who by his deed dated December 19, 1929, and recorded in said Recorder's Office in Franklin County, in Deed Book Vol. 236, Page 159, conveyed the same to Harry S. Waidlich and Sue C. Waidlich, his wife; and the said Sue C. Waidlich died February 16, 1946, thus vesting full and complete title in her surviving spouse, Harry S. Waidlich, who, by his deed dated August 6, 1946, and recorded in said Recorder's Office in Franklin County, in Deed Book Vol. 365, Page 572, conveyed the same to Donald Cromer Waidlich and John Ernest Waidlich, thus vesting an undivided one-half interest in the said Donald Cromer Waidlich and an undivided one-half interest in the said John Ernest Waidlich; and the said John Ernest Waidlich, single, by his deed dated March 25, 1949, and recorded in said Recorder's Office in Franklin County, in Deed Book Vol. 390, Page 399, conveyed his undivided one-half interest in the same to Donald Cromer Waidlich, thus vesting full and complete title in the above described real estate in Donald Cromer Waidlich, who,

with his wife, Beulah S. Waidlich, by their deed dated March 29, 1949, and recorded in said Recorder's Office in Franklin County, in Deed Book Vol. 390, Page 401, conveyed the same to Frank S. Long, single (straw transfer), who conveyed the same to Donald C. Waidlich and Beulah S. Waidlich, his wife, and recorded in said Recorder's Office in Franklin County, in Deed Book Vol. 390, Page 404.

6. Defendant's predecessor, the Farmers Bank of Mercersburg, Pa., an unincorporated private bank, acquired title to a tract of land in the Borough of Mercersburg, Pennsylvania, by deed of John Schonberger and his wife dated May 9, 1881, and recorded in said Recorder's Office in Franklin County, in Deed Book Vol. 68, Page 133. This deed conveyed to George C. Steiger, President of the firm trading and doing business as the Farmers Bank of Mercersburg, Pa., the following described real estate in said Borough:

"On the east by Main Street, on the north by lot of F. & J. Waidlich, and on the south and west by lot of said John Schonberger, being 22 feet front on said Main Street and running back a distance of 40 feet.

"It being a part of the same lot of ground (known as Lot No. 7 on the general plan of Borough of Mercersburg) sold and conveyed by John Patterson and William Boyd, Executors and Trustees for the heirs and legatees of Wm. Van Dyke's estate, by deed dated the 31st day of March, A. D. 1870 to F. & J. Waidlich, who by their deed dated Apr. 1, A. D. 1875, and recorded in the office for the recording of deeds, etc. in Record Book, Vol. 57, page 46, etc. sold and conveyed the same to John Schonberger, the grantor hereof * * *".

7. The full names of F. & J. Waidlich, referred to in Finding of Fact No. 6 as the grantees in the deed dated March 31, 1870, were Frederick C. Waidlich and John Waidlich and they were respectively the grand uncle and grandfather of Don-ald C. Waidlich, one of the plaintiffs. The deed from them, referred to in Finding of Fact No. 6, to John Schonberger, dated April 1, 1875, and recorded in said Recorder's Office in Franklin County, in Deed Book Vol. 57, Page 46, conveyed real estate in the Borough of Mercersburg, known as Lot No. 7 on the general plan of the Borough, and described as follows:

"Bounded on the east by Main Street, on the west by an alley, on the north by lot of F. C. and John Waidlich and on the south by lot of Michael Fallon, fronting on Main Street 50 feet and extending back 200 feet to said alley".

Therefore, as appears from Finding of Fact No. 5 and from the description in the deed to John Schonberger, the Messrs. Waidlich, who are the predecessors in title of the plaintiffs, were, at the time of the conveyance to Schonberger, the owners of the lot immediately to the north thereof, being Lot No. 6 on the said Borough plan, and the same having been acquired by them by deed dated February 24, 1869, and recorded in said Recorder's Office in Franklin County, in Deed Book Vol. 47, Page 426.

8. By deed dated August 30, 1945, and recorded in said Recorder's Office in Franklin County, in Deed Book Vol. 343, Page 317, J. M. Drumm, President, and S. G. Steiger, Cashier, of the Farmers Bank of Mercersburg, Pa., an unincorporated private bank, and The Farmers Bank of Mercersburg, an unincorporated private bank of Mercersburg, Pennsylvania, conveyed to The Farmers Bank of Mercersburg, a Pennsylvania corporation, all that tract of land on the west side of North Main Street in the Borough of Mercersburg, Franklin County, Pennsylvania, bounded and described as follows:

"Beginning at a point on the West side of North Main Street at lot of C. H. Fallon's heirs; thence with said Main Street North one (1) degrees (sic) thirty (30) minutes West forty-nine (49) feet two (2) inches to corner of bank building at

walk-way; thence South eighty-nine (89) degrees fifty (50) minutes West along the Northern side of building forty (40) feet to the rear thereof; thence North one (1) degree thirty (30) minutes West ten (10) inches to lot of H. S. Waidlich; thence with lot of H. S. Waidlich South eighty-nine (89) degrees fifty (50) minutes West one hundred fifty-eight and five-tenth (158.5) feet to a public alley; thence with said alley South one (1) degree thirty (30) minutes East fifty (50) feet to a post at lot of C. H. Fallon's heirs; thence with lot of C. H. Fallon's heirs North eighty-nine (89) degrees fifty (50) minutes East one hundred ninety-eight and five-tenth (198.5) feet to a point on North Main Street, the place of beginning.

"Together with the buildings thereon erected, including the portion thereof which extends over and beyond the Northern boundary of the above described real estate.

"And together with all right, title and interest which the grantors have to the walk-way, immediately North of the bank building which is located on the Northeastern portion of the real estate above described, and to have and maintain a building over said walk-way.

"The tract of land above described is composed of two pieces of real estate, the one conveyed by John Schonberger and Mary Schonberger, his wife, by deed dated the 9th day of May, 1881, and recorded in Franklin County Deed Records in Deed Book Vol. 68, page 133, to George C. Steiger, President of the firm trading and doing business as the Farmers Bank of Mercersburg, Pa., his successors, heirs and assigns, of whom J. M. Drumm, President of the Farmers Bank of Mercersburg, Pa., an unincorporated private bank, one of the grantors herein, is a successor, and the other conveyed by J. Raymond Myers and L. L. Steiger, Executors of the last Will and Testament of Frank E. Myers, late of the Borough of Mercersburg, in the County of Franklin and State of Pennsylvania, deceased, by deed dated the 29th day of April, 1939, and recorded in Franklin County Deed Records in Deed Book Vol. 271, page 220, to S. G. Steiger, Cashier of the Farmers Bank of Mercersburg, Pa., and his successors in office, it being an unincorporated private bank, one of the grantors herein. The Farmers Bank of Mercersburg, an unincorporated private bank, joins as grantor in this conveyance so that all interest which it may have in the real estate and the easements herein described shall become vested in the grantee herein".

9. The deed referred to in the recital of title in Finding of Fact No. 8 from the Executors of Frank E. Myers dated April 29, 1939, and recorded in said Recorder's Office in Franklin County, in Deed Book Vol. 271, Page 220, to S. G. Steiger, Cashier of the Farmers Bank of Mercersburg, Pa., was for a part of Lot No. 7 on the general plan of the Borough of Mercersburg, the title thereto having been acquired by Frank E. Myers from John Schonberger, who, in turn, as heretofore found, had acquired title for all of Lot No. 7, with a frontage of 50 feet on Main Street and a depth of 200 feet, from Frederick C. Waidlich and John Waidlich, plaintiffs' predecessors in title, and who, by the deed dated May 9, 1881, and recorded in said Recorder's Office in Franklin County, in Deed Book Vol. 68, Page 133, conveyed a portion of Lot No. 7 to George C. Steiger, President of the firm trading and doing business as the Farmers Bank of Mercersburg, Pa.

10. In the year 1881 the Farmers Bank of Mercersburg, Pa., constructed a bank building on the lot which had been conveyed to the bank by John Schonberger on May 9, 1881. This bank building was constructed in such a way that at the first floor level there was a space of about 4 feet between the north wall of

the bank building and the south wall of the building on the Waidlich property. However, at the second floor level the bank constructed the second story of its building over and across the four foot space and attached this second story construction to the south wall of the Waidlich property. The effect of this was to leave a covered passageway 4 feet wide underneath the second floor of the bank building and extending westwardly from Main Street a distance of 40 feet, which was the entire depth of the bank building. At the time of this construction the owners of the Waidlich property were the said Frederick C. Waidlich, and John Waidlich, and the said John Waidlich, grandfather of Donald C. Waidlich, was a member of the Board of Directors of the Farmers Bank of Mercersburg, Pa.

11. There is no written instrument in existence bearing upon the construction of the second floor of the bank building across the said 4 foot strip of land or the attachment of said story to the south wall of the Waidlich building or bearing upon the use of the alleyway or passageway 4 feet wide underneath the second story of the bank building.

12. The use and possession by the defendant bank and its predecessor in title of the second story of its bank building, constructed in the manner set forth in Finding of Fact No. 11, has, since the year 1881, been open, adverse, uninterrupted, exclusive, visible, without interference and without asking leave. No formal objection was made by the plaintiffs or their predecessors in title to the manner in which the second story of the bank building was located or to the use by the bank of that portion over the alleyway until the year 1951, nor was any intimation of plaintiffs' present contention revealed in any conversations or correspondence prior to 1948.

13. The said 4 foot alleyway beneath the second floor of the bank has been used in common by the plaintiffs and their predecessors in title and the defendant bank and its predecessors in title for many years. After John Schon-

berger conveyed the original lot to the Farmers Bank of Mercersburg, Pa., he used this alleyway in common with the Waidlichs as a means of ingress and egress to the rear portion of that part of Lot No. 6 retained by him, and when he conveyed the remaining portion of Lot No. 6 to Frank E. Myers, which was about 1919 or 1920, Mr. Myers and his family used the same in common with the Waidlichs. Following the conveyance by the Executors of Frank E. Myers to the bank of the remaining portion of Lot No. 6, the bank, its tenants and employees, have used this alleyway in common with the Waidlichs. This use in common with the Waidlichs, for more than 21 years prior to the bringing of this suit, has been uninterrupted, open and without asking leave and without objection. This alleyway was further used in common by the bank and the Waidlichs in that two pipes of ancient origin connecting the bank building and the Waidlich building extend across the alleyway beneath the second floor of the bank building. These pipes are not now used and their purpose was not explained.

14. At the entrance to the 4 foot alleyway on Main Street there has been a wooden doorway, apparently from the time when the bank first constructed its bank building and built the second story on the north side over the 4 foot space and against the Waidlich building. This doorway reached only part of the distance to the second story. The doorway was jointly maintained by the owners of the Waidlich property and the bank, as evidenced by certain receipts showing that in the year 1945 when Harry S. Waidlich and Sue C. Waidlich, the father and mother of Donald C. Waidlich, were the owners of the property, Mr. Waidlich was paid by the bank one-half the cost of installing a new doorway at the entrance to this alleyway.

15. There is no evidence which shows with any degree of certainty the exact boundary line between the real estate owned by the defendant bank and the real estate owned by the plaintiffs.

16. In the year 1950 the bank remodeled its building, including that portion acquired from the Executors of Frank E. Myers lying on the south side of the original building. At that time the bank faced the front of its building below the second story with one layer of brick, with a cast stone lintel at the top of the brick casing just below the second story, all of which was supported by its own stone foundation. No brick facing was placed on the second story of the bank building. This brick facing was attached to the old front wall of the bank building by wall ties spaced at a distance of every eight courses of brick.

17. The work done by the bank in 1950 in facing the first floor of its bank building with brick included facing the same with one layer of brick between the top of the doorway leading to the alleyway and the second story. This facing above the doorway covered a space, including the stone lintel, of approximately 3 feet by 4 feet, the latter being the width of the alleyway. This brick facing over the doorway was not attached in any way to the Waidlich building and the entire weight was borne by a cantilever, consisting of a steel beam or plate, which was anchored in the brick facing of the other portion of the bank building. Accordingly, no part of the weight of the brick facing was supported by the Waidlich building, and no additional burden was placed upon the Waidlich building by this work.

18. The only claim asserted by the plaintiffs is based upon an alleged encroachment by defendant's predecessor in title, beginning in the year 1881 and continued by the defendant, for damage to their building as a result thereof, and for further damage to their building by the work done in 1950.

## Conclusions of Law

1. The right of the defendant bank to keep and to maintain the second story of its bank building across the 4 foot alleyway and to have this second story attached to the Waidlich building has been established by adverse use by the defendant and its predecessor in title for a period of more than 21 years prior to the bringing of this action, namely, since the year 1881, and this use cannot now be interfered with by the plaintiffs.

2. The work done by the bank in remodeling its building in the year 1950 and facing the first floor thereof with brick was not an encroachment or interference with any rights of the plaintiffs, and no additional burden was placed upon the plaintiffs' land by reason thereof.

3. The plaintiffs are not entitled to any damages in this action or any injunction.

4. Judgment will be entered in favor of the defendant, The Farmers Bank of Mercersburg.

## Discussion

We are here dealing with an easement problem that to all intents and purposes was completely dormant from 1881 to 1951, a period of seventy years.

In 1881, the predecessors of the defendant bank, then an unincorporated private bank, constructed its banking house which was maintained in its original state substantially the same until 1950 when certain alterations, hereinafter discussed, were made. The property to the north of the bank building has been in the Waidlich family since 1869. In that year F. C. Waidlich and John Waidlich, grandfather of plaintiff, took title to the property. John later acquired the one-half interest of F. C. and subsequently, in 1902 or 1903, died seized of the entire interest in the property. The estate of John Waidlich then, under date of February 7, 1906, conveyed to Harry S. Waidlich, father of plaintiff, who retained complete ownership in the property until August 6, 1946, when he conveyed his entire interest in the said property to his sons, Donald C. Waidlich and John E. Waidlich. By deed of March 25, 1949, John E. Waidlich conveyed his undivided one-half interest in said property to Donald C. Waidlich, plaintiff herein, thus vesting in the said Donald C. Waidlich the complete title in said property. Later the title was vested in

Donald C. Waidlich and Beulah S. Waidlich, his wife, the plaintiffs herein.

The present dwelling house on the Waidlich property, the servient owner, was standing when the bank, the dominant owner, constructed its banking building in 1881. As indicated in Finding of Fact No. 10, the bank building was then constructed in such a way that at the first floor level there was a space of about 4 feet between the north wall of the bank building and the south wall of the Waidlich house. However, at the second floor level the bank constructed the second story of its building over and across the 4 foot space and attached the second story construction to the south wall of the Waidlich house. The joists of the second floor of the bank building were tied in with the south wall of the Waidlich house and the buildings were further connected by at least one stovepipe. The effect of this was to leave a covered passageway 4 feet wide underneath the second floor of the bank building and extending westwardly from Main Street a distance of 40 feet, which was the entire depth of the bank building. At the time of this construction the owners of the servient property were Frederick C. Waidlich and John Waidlich, the latter the grandfather of the plaintiff and at that time a director of the bank and continued as such up to the time of his death in 1902 or 1903, a period of at least twenty-one years. Harry Waidlich, son of John Waidlich and father of plaintiff, was in the employ of the bank approximately forty years, first as bookkeeper and later as assistant cashier.

It was stipulated that there was no writing of any kind which had any bearing on how the bank building came to be constructed in its present location over the alleyway and against the south wall of the Waidlich building.

The undisputed facts indicate the existence of the four foot wide area or alleyway between the properties, the second floor extension of the bank building over the area or alleyway to the Waidlich building with the joist and stovepipe connection, the intimate connection of the Waidlich family with the bank from the time of the bank construction and the continuous occupancy of the Waidlich building by the plaintiff and his ancestors for a period of seventy years without a word of dissent to the continuance of the easement above indicated.

The improvements in question were made by the bank in 1950 and were confined entirely to the first floor of the bank. They consisted of refacing or recasing the first story of the bank with brick, all of which was self-supporting. Nothing was done to the doorway between the bank building and the Waidlich building. Over the doorway was placed a cantilever of steel angle iron, 6 feet long, 4 inches wide, and one-half inch thick, extending from several feet under the brick casing in the front of the building thence over the doorway toward the Waidlich building. The cantilever is not in any way attached to the Waidlich building and the new brick casing is three-eighths of an inch from the Waidlich building. No additional weight was placed on the Waidlich building and no extension was made to the original easement by the improvement. So far as I have been able to observe from a careful review of the testimony, the situation, easement wise, is precisely the same as it was seventy-five years ago.

It is plaintiffs' contention that the use made of plaintiffs' property by the bank from 1881 was at all times permissive and at the will of plaintiffs and that an additional servitude was imposed on plaintiffs' property by the improvements made to the first story front of the bank in 1950. Defendant, on the other hand, claims that it has acquired by prescription an easement of the right to continue to maintain their bank building in its present form, which easement they contend was not in the least enlarged upon by the 1950 bank improvement.

In support of plaintiffs' claim that the use made by the bank of the Waidlich building was a permissive use,

they point to the fact that the bank has produced nothing in writing to prove a grant; that the attitude of John Waidlich, who was a director at the time of construction of the bank in 1881, was that of a good neighbor; and that it could not be expected that Harry Waidlich would jeopardize his forty year employment by the bank by voicing a dissent to the use made of his property by the bank. Neither of these arguments carry conviction. Parenthetically, in this connection, it might be pertinent to inquire would the bank have gone to the expense of erecting this building in this manner in 1881 on a mere permissive basis? The facts here involved present a vastly different picture from a simple easement such as a mere pathway over another's land.

"An easement by prescription is based on the presumption that the right has been granted, but that the grant has been lost; and generally it may be acquired by the exclusive and uninterrupted use and enjoyment of the right for a period of time analogous to the time sufficient to acquire title to the soil by adverse possession." 28 C.J.S., Easements, § 6, p. 641.

"The rule in the United States, subject to the limitation that, where the origin of the easement is known, a lost grant is not to be presumed, is generally well settled, in analogy to the statutory limitation which applies only to corporeal hereditaments, * * *, that the enjoyment of an easement as an incorporeal hereditament exclusive and uninterrupted for a time sufficient to acquire title to the soil by adverse possession, affords a conclusive presumption of a grant to be applied as a presumptio juris et de jure, and is sufficient to establish a prescriptive right, * * *, and the title so acquired is as effective and complete as one obtained by grant, * * *." 28 C.J.S., Easements, § 6, p. 642.

Similarly, the Supreme Court of Pennsylvania in Shinn v. Rosenberger, 347 Pa. 504, 507, 32 A.2d 747, 748, said:

"* * * Title by prescription has its foundation in the presumption of a grant arising from the long continued use or possession of some right of common or other profit or benefit to be taken from or upon the land of another. Accordingly, the use must be such as to indicate that it is claimed as a right and is not the effect of indulgence or anything short of a grant. Gibbs v. Sweet, 20 Pa.Super. 275, 284. Mere user, no matter how long continued, will not give title. In order to give title the right must not only have been enjoyed without interruption for twenty-one years, but the enjoyment must have been adverse to the rights of the owner of the land. Bennett v. Biddle, 140 Pa. 396, 404, 21 A. 363. Open, notorious and uninterrupted user for a period of twenty-one years will be presumed to have been in pursuance of a full and unqualified grant, in the absence of evidence of some license, indulgence or some special contract inconsistent with the right claimed. Pierce v. Cloud, 42 Pa. 102, 114. * * *"

■ Now, as to the burden of proof, Thompson on Real Property, Vol. 1, Page 716, says:

"* * * Generally, when a user is shown for the required statutory period a presumption arises that the use was adverse and the owner of the servi-estate has the burden of proving that the use was permissive or under license and not adverse. The acts done by the party claiming the benefit of this presumption, and his predecessors in estate must have been, in themselves, such as the other party, having the right to object to, or complain of, did neither, but submitted to them without objection or challenge. Permissive user may be shown by inference or implication. However, where the

use has continued through a long period of years, only slight evidence is required to show that it was enjoyed under a claim of right, and in such case the burden is upon the owner of the servient estate to show that the use was merely permissive. * * * "

■ Of course, as stated by the court in Shinn v. Rosenberger, supra, "where the evidence produced by the claimant in support of his alleged right to an easement fully explains the manner in which the enjoyment began and is not sufficient to warrant a finding that the owner knew or ought to have known that the use was under a claim of right, the presumption of a grant does not arise * * * ." Quite the contrary are the facts in the instant case. The plaintiffs here have completely failed to rebut the presumption of a grant arising from the facts as presented by the defendant,—open, notorious and continuous usage for approximately seventy years without a word of dissent.

Ironically, it would appear from the testimony that the dissent registered by plaintiffs and culminating in the institution of this suit may have been prompted by the unauthorized and gratuitous fulminations of the president and a director of the defendant bank. Plaintiff deduces from an oral conversation had by the president of the bank with plaintiff and his brother in 1948, and certain correspondence with the president and another director, that the bank was of the opinion that its original use of the second floor of its bank building as it affected the Waidlich property was permissive. There was no evidence that either the president or the director were acting under specific authority from the bank and even if they were, it would have amounted to nothing. At the most, although obviously embarrassing to the bank, what they said and what they wrote may be characterized as misstatements of a legal conclusion predicated on a misunderstanding of the law.

■■ Under the facts of this case it is our opinion that the bank acquired an easement against the Waidlich property after twenty-one years of open, adverse and continuous use which became firm in 1902. This easement having thus become established cannot be divested except with the same formality by which it came into existence, that is either by specific grant or by prescription which is based on the presumption that such easement has been granted but that the grant has been lost. The plaintiffs have completely failed to overcome the presumption of a grant of the easement in question.

Judgment will be entered in favor of the defendant.