385 A.2d 386

**Richard R. CRAMER and Rhoda K. Cramer, Appellants,**

v.

**HERSHEY TRUST COMPANY, Trustee for Milton Hershey School, Appellee.**

Superior Court of Pennsylvania.

Argued March 16, 1977.

Decided April 13, 1978.

David C. Eaton, Harrisburg, with him Nauman, Smith, Shissler & Hall, Harrisburg, for appellants.

Rod J. Pera, Harrisburg, with him H. Lee Roussel, Harrisburg, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

This is an appeal from an order of the Court of Common Pleas of Dauphin County, sitting in Equity, refusing to order defendant-appellee to restore a country lane it plowed over, a lane which plaintiffs-appellants claim a prescriptive right to use.

The parties to this action own adjoining plots of farmland near Hershey, Pennsylvania (See sketch as Appendix to this opinion). The Hershey tract extends north to U.S. Route 322 and beyond; the portion involved in this case is bounded on the south by the Cramer property. The western portion of the Hershey tract was previously owned by John Moyer, and the eastern portion had been owned by Menno Hershey. Richard and Rhoda Cramer and William and Carol Sponaugle purchased the Eby property from John Eby's estate in 1973. The Cramers and the Sponaugles then divided the property among themselves with the Sponaugles receiving a portion bounded on the South by Eby Road. A lane known as Eby Lane runs from Eby Road through the Sponaugle property, then through the Cramer property; until the part of the lane on the Hershey tract was plowed over, it continued through the Hershey tract to Route 322.[1] The exact location of the lane as it had run through the Hershey tract is not clearly established in the record; that is, it is not clear whether the lane occupied portions of both the prior John Moyer-Menno Hershey tracts of the now present Hershey Trust tract or whether the lane was solely on the Moyer portion or solely on the Menno Hershey portion.

---

1. It appears that the Cramers have the use of the part of the lane on the Sponaugle property.

The events by virtue of which the Cramers claim an easement over the Hershey tract by way of the lane all occurred while their present property was part of the Eby farm, which was successively owned by various ancestors of John Eby.

The Cramers contend that the testimony of surviving and knowledgeable members of the Eby family showing more than 21 years of the Eby family use of Eby Lane to get to Route 322 establishes an easement by prescription. They cite *Garrett v. Jackson*, 20 Pa. 331 (1853) for the following proposition:

"A passage by one man over the land of another, with the special permission of the owner on every occasion of its use, will not raise the presumption of a grant, no matter how often it may occur, nor how long continued. So a license to use the road for a certain defined period, and the enjoyment of it under such license, will give no right after the expiration of the time. But where one uses an easement whenever he sees fit, without asking leave, and without objection, it is adverse and an uninterrupted adverse enjoyment for twenty-one years is a title which cannot be afterwards disputed. Such enjoyment, without evidence to explain how it began, is presumed to have been in pursuance of a full and unqualified grant. The owner of the lane has the burden of proving that the use of the easement was under some license, indulgence, or special contract inconsistent with a claim of right by the other party."

Appellee's response is that, assuming that the 21 years of use has been shown, the presumption of a grant is overcome by the evidence that the use in question was part of a mutual exchange of advantages. Appellee relies on *Shinn v. Rosenberger*, 347 Pa. 504, 507, 508, 32 A.2d 747 (1943), a case involving the use of a portion of a lake by the owner of another portion of the lake, where the court said:

"[W]here the evidence produced by the claimant in support of his alleged right to an easement fully explains the manner in which the enjoyment began and is not suffi-

cient to warrant a finding that the owner knew or ought to have known that the use was under a claim of right, the presumption of a grant does not arise. . . ."

"[P]roof [of permission] was not necessary in view of the uncontradicted evidence of appellant's own witnesses establishing that the user of the lake began and was continued . . . as a matter of mutual accommodation to the respective owners. The user by each of the adjoining owners of the portion of the lake owned by the other being mutually advantageous, it would have been to the interest of neither to have interrupted the user of the other and, consequently, no presumption that the user of either was pursuant to a grant can properly be said to arise."

The most important testimony showing use by the Ebys comes from two members of the Eby family who used the lane on a daily basis to reach Route 322 (then known as the Horseshoe Pike) where they caught a street car for school. This testimony covers a period from 1906 to 1930. These witnesses also testified that John Moyer, the prior owner of one tract of the present Hershey property, used the Eby portion of the lane daily to reach other farms he owned on Eby Road.

From all of the evidence the lower court held that: "Assuming *arguendo* that the testimony established 21 years of use, the evidence of mutual accommodation overcame the presumption of a grant." The difficulty with this conclusion is that no evidence was presented as to use of any part of the Eby Lane by the owners or occupants of the Menno Hershey property. We cannot conclude from the record that the portion of the lane situated on the Hershey Trust tract before it was plowed over was entirely on the former Moyer parcel. This is important since the evidence of mutual use involves only the Ebys and the Moyers, because the mutuality theory fails to fully explain the use if part or all of the lane were on the Menno Hershey tract. It cannot be said of the Hersheys as it might be of the Moyers, that they had no reason to object to the use.

From all the evidence adduced at the trial we are not able to reach any conclusion as to whether 21 years of uninterrupted and adverse use was properly shown, for the further reason that all the testimony was not passed upon by the court. As the court states in its opinion:

"While the decision herein is based on a finding that the use of Eby Lane was permissive in inception and continuation, we also express reservation concerning the sufficiency of the evidence to show a twenty-one year period of uninterrupted or continuous and open use of Eby Lane. Specifically, we question whether the evidence is of the quality required to obtain a prescriptive right. Although the lane was physically in existence many years the testimony clouds the question of the extent of its actual use. The evidence on this phase of the litigation is, understandably, somewhat vague and hazy. Apparently it was used between 1900 and 1930 with varying degrees of regularity, but it is debatable whether the use was shown to be 'uninterrupted' for twenty-one continuous years. Since 1930 the evidence of use is sketchy and consisted of the testimony of family members whose familiarity with the area was interrupted because of changes in residence. The witness closest to events during the last thirty-five years disproved any regular use of Eby Lane during this period of time. It would be difficult at best to resolve these issues on the testimony presented and we do not deem it necessary to attempt to do so."

We reiterate that the evidence failed to establish the location of Eby Lane with respect to the Menno Hershey and John Moyer tracts, except that the record indicates the lane was near the boundary of both. In light of the lower court's assumption for the sake of argument that the requisite twenty-one years of user had been demonstrated, Hershey Trust had the burden of proving all the facts necessary to establish mutual advantage or agreement. Since Hershey Trust failed to do so, we cannot affirm on the current state of the record. On the other hand, we may not reverse because the court below did not expressly find that the

Cramers carried their burden of demonstrating twenty-one years of uninterrupted use. Hence, under the circumstances of this case as it is currently before us, any conclusive decision on our part would be premature. In order that the facts be more thoroughly developed and reviewed, we must remand for a new hearing.

Order reversed and cause remanded for further proceedings not inconsistent with this opinion.

PRICE, J., notes his dissent.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

# APPENDIX

AGREED EXTRACT FROM
PLAINTIFFS EXHIBITS 8 AND 9

AGREED EXTRACT FROM PLAINTIFFS' EXHIBITS NOS. 8 and 9